$2,700 cannot be supported. Richard Curran had deducted from the proceeds arising from the sale of the house a sum equivalent to his interest therein, on the principle of life annuities; and he was not entitled to a gross sum, and also to interest on the whole sum. As between Curran and his children, he would be chargeable with the sum and interest. There is no evidence in the record which tends to sustain the twenty-first finding of fact, that the bill of sale was fraudulent in fact. I think the children of Richard Curran acquired a valid lien by the bill of sale of December 9, 1895. The judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event.

GREEN, J., concurs.

---

ROCHESTER SAV. BANK v. WHITMORE et al.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. MORTGAGES—FORECLOSURE—SURPLUS—JURISDICTION.

The court in which a mortgage had been foreclosed had power to determine the rights of the parties to a surplus created by a sale on such foreclosure, when claimed by both the mortgagors, and by the holder of a junior mortgage on the same property.

2. SAME—DISABILITY OF MORTGAGEE—RIGHTS OF ASSIGNEE.

The assignee of a mortgage to a loan association, which was unable, by insolvency, to perform its contract with the mortgagors, was subject to the same disabilities and conditions which affected such association respecting the enforcement of such security.

3. SAME—DISPOSITION OF SURPLUS ON FORECLOSURE.

Certain shareholders in a loan association, on borrowing from it a sum of money, executed a bond and mortgage on their real estate, subject to a prior mortgage, which the association assumed and agreed to pay, and also assigned their shares to it, as further security. Before maturity of the stock, the association became insolvent, without having taken up such prior mortgage, and its bond and mortgage were thereafter assigned to a third party by the receiver. The property was sold on foreclosure of such prior mortgage, and produced a surplus, which was claimed both by the mortgagors and by the assignee of the second bond and mortgage. It appeared that the loan actually made by the association, with interest, and the interest paid by it on the senior mortgage, amounted to less than the aggregate of the monthly payments made by the mortgagors, with interest thereon, and the costs of such foreclosure. Held, that such second bond and mortgage were not available as a lien on such surplus money, in view of the equities of the mortgagors, and over their superior rights as the owners of the equity of redemption in the mortgaged premises.

4. SAME—CONTRACT OF MORTGAGEE—WAIVER OF OBLIGATION.

Where a loan association, as part of the consideration of a mortgage to it, agreed to assume and pay off a certain prior mortgage, a stipulation that it should not be required to do so for a specified period did not relieve such association from the duty of protecting the mortgagors against the foreclosure of such prior mortgage.

5. SAME—LOAN ASSOCIATIONS—INSOLVENCY—RIGHTS OF SHAREHOLDERS.

Shareholders in a loan association are entitled to credit, as against such association or its assignee, for whatever they have paid in, whether called "premiums," "dues," or "payments," and interest thereon, where their contract has been terminated by reason of the insolvency of such association.

Appeal from special term, Monroe county.

⸱ Foreclosure suit by the Rochester Savings Bank against William W. Whitmore, Andrew Holzwarth, the Granite State Provident Association, and others. From an order distributing the surplus, on sale of the mortgaged property, to defendants Whitmore and Holzwarth, Omar A. Jenks, a claimant, as assignee of a junior mortgage to the defendant the Granite State Provident Association, appeals. Affirmed.

The mortgage that was foreclosed was executed by the respondents and their wives upon their real estate, located in the city of Rochester, on the 24th of August, 1894, to secure the payment of $1,000 in one year, with interest at the rate of 5 per cent., payable half-yearly, on the 1st day of January and July. The defendant the Granite State Provident Association was a homestead loan corporation, created under the laws of the state of New Hampshire, having its headquarters at Manchester, in that state, and permitted to do business in this state. The members of the association became shareholders therein by subscribing to shares, the par value of which was $200, and were divided into two classes, known as the "borrowers" and "nonborrowers." The association loaned money to the borrowers, on interest at the rate of 6 per cent., upon real-estate security; the borrowers assigning their shares to the association as additional security for the amount of the loan, which could not exceed the par value of the shares held by the borrowers. The borrower stipulated to pay a fixed amount on each share, per month, until such payments, with dividends on the shares under the rules of the association, equaled the par value of the shares pledged to redeem the security. Then the security was discharged and canceled. The nonborrowing member paid a fixed monthly rate upon his shares, until his payments, with dividends, under the rules of the association, equaled the par value of his share, when the amount thereof was refunded to him by the association. He had the privilege, also, of withdrawing from the association upon giving 60 days' notice, under certain conditions, and receiving the cash value of his certificate of shares at that time. On or about the 1st day of March, 1894, the respondents subscribed for eight shares in the homestead fund of the association, and received a certificate therefor, and became borrowing members in the association. On the 28th day of August, 1894, the association loaned to the respondents $600, and received their bond, in the penal sum of $3,200, with the following conditions: "The condition of this obligation is such that if the above William W. Whitmore and Andrew Holzwarth, their heirs, executors, or administrators, shall well and truly pay unto the said Granite State Provident Association, its successors, certain attorneys or assigns, at the office of the said association, in Manchester, New Hampshire, the sum of twenty-four dollars in advance on the first day of each month, until the eight shares in the homestead fund of the said association owned by said William W. Whitmore and Andrew Holzwarth, and standing in their names on the books of the association, and represented by certificate of shares number 20,677, shall be worth par $200.00 per share (being three dollars per share monthly on each of said eight shares), and shall comply with the conditions indorsed on said certificate, and with all the rules and by-laws of said association, which are made a part hereof, then the said obligation shall be void; otherwise in full force and virtue." The conditions indorsed upon the certificate referred to contained the contract between the association and its shareholders, and defined their respective rights. The respondents, with their wives, executed a mortgage to the association, in connection with said bond, and at the same time, which recited, in substance, the condition contained in the bond, and that it was in consideration of the sum of $600, and "in further consideration that said grantee [the association] had assumed and agreed to pay off, when due, and have canceled of record, a certain prior mortgage hereinafter mentioned [then describing the respondents' premises in Rochester], subject, however, to a prior mortgage of even date herewith, to the Rochester Savings Bank, to secure the payment of one thousand dollars, payable in one year from date, with interest at five per cent. per annum, payable semiannually, which said prior mortgage the said grantee, the Granite State Provident Association, as a part of the consideration hereof, hereby assumes and agrees to pay." This mortgage, which will hereafter be called the "second mortgage," contained the following provision: "That after default in the payment

of interest, taxes, or assessments for six months, there shall be payable hereon the sum of sixteen hundred dollars and interest, together with such other sums as may be due under the conditions, rules, and by-laws mentioned in said bond or obligation, less the withdrawal value of the grantors' said shares, and less, also, such sums as may be due and unpaid upon the prior mortgage above mentioned." The respondents also assigned to the association their certificate of the eight shares, as further security, as required by a condition in their certificate. In March, 1894, the association became insolvent, and ceased to be a going institution. The supreme court of New Hampshire put the concern into the hands of an assignee, "for the public safety," and ordered that it should not continue to transact its business or exercise its corporate franchise. In the same month the supreme court of this state, in a people's action, enjoined it from exercising its corporate franchises, and collecting and receiving any of its property and effects, and appointed a temporary receiver to take charge of its property in this state. This temporary receiver executed an assignment of the second mortgage and the bond accompanying it to one Minor H. Brown, who on the 14th of October, 1896, assigned the same to the appellant Jenks. Up to April 1, 1896, the respondents performed all of their covenants and agreements with the association, and made the monthly payments of $24 upon the second bond and mortgage, amounting to the sum of $504. The association never paid the first mortgage, nor any portion of the same, except the payment of interest due January 1, 1896. It defaulted in the payment of the interest due in July, 1896. The action to foreclose the first mortgage was commenced in August, 1896, and the foreclosure sale occurred January 8, 1897, when the surplus fund was created. The cost of the foreclosure was $189.28, which was collected out of the sale of the respondents' property. When the surplus fund was created, the account of the association and the respondents was as follows: The association had advanced the loan of $600. There was interest due on the loan to April 1, 1896, $57; interest paid on the first mortgage to January 1, 1896, $66.66; interest upon sums unpaid to April 1, 1896, $2.75; total, $726.41. The respondents had made monthly payments aggregating $504. Interest upon these payments to April 1, 1896, $41.12; interest on the first mortgage from January 1 to April 1, 1896, $12.50; foreclosure costs collected, $189.28; making a total of $746.90. There had been collected from the respondents interest upon the first mortgage from April 1st until the date of the sale. On the 1st day of September, 1894, the respondents executed and delivered to the association an instrument in writing, reciting that the association had loaned to the respondents $1,600, and on the 24th of August, 1894, had executed the second bond and mortgage, and referred to the covenant of the association to pay the first bond and mortgage, with interest, and reciting an understanding between the parties that the said prior mortgage was not to be paid until after the expiration of five years from the date thereof, and that in consideration of the premises, and of the loan of the $600, the respondents covenanted "that they will not demand or require the payment or cancellation of said mortgage executed by them to the Rochester Savings Bank by said association until after the expiration of five years from the date thereof."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George P. Decker, for appellant.
William W. Mumford, for respondents.

WARD, J. The special term made an order referring the matter to a referee, to ascertain and report as to the rights of the parties to the surplus money; and the single question before him was, which of the parties to this controversy is entitled to it? Proof was taken by the referee, and upon the coming in of his report the court made the order appealed from. The investigation necessarily involves the validity of the claim of the appellant under the second mortgage, which had been assigned to him through the instrumentality of the receiver in the people's action, and the right of the appellant to enforce it as a lien

upon the fund.    We think the court had ample power to make this investigation, and determine the rights of the parties under this mortgage.    Baker v. Baker, 70 Hun, 95, 23 N. Y. Supp. 95; Bergen v. Carman, 79 N. Y. 146; Halsted v. Halsted, 55 N. Y. 442; Insurance Co. v. Bowen, 47 Barb. 618.

The respondents insist that the appellant did not acquire all the rights of the association in the bond and mortgage assigned to him. Without discussing that question, and assuming that the appellant stands in the place of the association, as regards this bond and mortgage, it follows that he is subject to the same disabilities and conditions that the association would be under, growing out of its insolvency, and its failure to perform its contract with the respondents.

The second bond and mortgage grew out of the relation of the respondents as shareholders in the association, and is so connected with the reciprocal duties and rights of the respondents and the association that we must construe the second bond and mortgage with relation to that situation.    The $1,000 mortgage to the Rochester Bank was assumed by the association as a part of the contract creating the second mortgage.    The association having become insolvent, and incapable of proceeding further as a corporation, and having committed a breach of its contract with the respondents, the situation changed, and the right of the respondents for damages for a breach of the contract by the association had accrued.    Further payments by the respondents as required by their bond and mortgage was excused by the failure of the association.    It was the implied contract, at least, of the association with its shareholders, that it would continue its business, keep on hand the fund required by law for their security, and remain in a condition, so long as its contract continued, to perform its obligations. People v. Empire Mut. Life Ins. Co., 92 N. Y. 105; Attorney General v. Guardian Mut. Life Ins. Co., 82 N. Y. 336; In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354, 376, 30 N. E. 114; Cook v. Kent, 105 Mass. 246; Swift v. Association, 82 Pa. St. 142; Association v. Platt, 5 Duer, 675; Brownlie v. Russell, 8 App. Cas. 235.    The insolvency of the corporation, and its ceasing to be a going institution, left the association without power to perform its contracts, and excused the respondents from further performance on their part, and new conditions arise; and the rights of the parties must be adjusted upon the equitable principles upon which the special term proceeded when it credited the association with what it had paid, and charged it with what it had received from the respondents.    Of this the association cannot complain, as the situation arose from its own default and incapacity to perform its contract.    The second bond and mortgage, therefore, could not be enforced against the respondents; and consequently, as against them the mortgage was not available as a lien upon the surplus money, in view of the equities of the respondents, and over their superior rights as the owners of the equity of redemption in the mortgaged premises.    Primarily, when a surplus is created upon a mortgage foreclosure, it retains the character of real estate, and goes to the mortgagor.    If any intervening right or lien exists, in behalf of another person, superior to the mortgagor's claim to the

49 N.Y.S.—55

fund, the burden is upon the person asserting such lien to establish it. The appellant has failed to establish this lien, under the circumstances of this case. The learned counsel for the appellant, however, contends that the association was not in default with respect to the first mortgage, because of the stipulation of September 1, 1894, that the respondents would not demand or require the payment of the first mortgage by the association until after the expiration of five years from the date thereof. If we concede that this stipulation was given upon sufficient consideration, it must be construed in connection with the agreement of the association contained in the second mortgage, to pay the first mortgage, with interest, semiannually, and the purpose and intent of the parties with relation to that mortgage. The stipulation does not waive the obligation of the association to pay the semiannual interest, nor does it excuse the association from the duty of protecting the respondents from the foreclosure of that mortgage, and the sale of their property. The most that can be claimed for that stipulation is that as long as the bank would permit the first mortgage to remain without foreclosure, and the association paid the interest thereon, the respondents would not insist upon its payment under five years from its date.

Considerable discussion arises upon the points of the learned counsel as to the rights of various shareholders in the association, outside of the parties to this controversy; and it is claimed by the appellant's counsel that it would be unjust to the nonborrowing shareholders to permit the respondents to be allowed their advances upon the bond and mortgage, and the costs and interest that they have paid; while it is insisted by the respondents' counsel that, in the adjustment of the equities between the two classes of shareholders, the borrowers are the greatest sufferers under the scheme adopted by the association. The record before us does not disclose the facts upon which we can intelligently pass upon the rights and equities of other shareholders, not parties to this controversy. Nor are we required to do so. The appellant has chosen to submit his claim to this fund in this proceeding, and not to test the rights of the parties by an appropriate action, where all parties interested in the general funds of the association are represented, with issues properly framed, and he must stand or fall upon the conditions which appear in this record.

The appellant's counsel also claims that the term "dues" which have been paid by the respondents under their contract with the association, have been lost, and cannot be recovered back. These "dues" appear in the proceedings to be called "premiums" as well. The difficulty with this contention is that the association and its assignee cannot stand upon a contract which they have violated. The respondents are entitled to recover all that they have paid, whether it is called premiums, dues, or payments, and the interest on the same, because the contract is at an end; and, as we have said, the rights of the parties are to be adjusted upon equitable principles. As a result of the failure of the association to perform its contract to protect the respondents from the bank mortgage, a foreclosure has occurred, and the respondents have been compelled to pay a considerable bill of costs. There is no reason why they should not be allowed the amount of these

costs in this proceeding, and the court at special term properly made the allowance.

These views lead to the conclusion that the order appealed from should be affirmed, with costs, which should be paid by the appellant personally. All concur; FOLLETT, J., in result.