JAMES HANNON, Plaintiff, *v.* DORR RAYMOND COBB, as Assignee of the CENTRAL CITY BUILDING AND LOAN ASSOCIATION for the Benefit of Creditors, Defendant.

*Insolvent building and loan association — basis upon which a borrowing shareholder may obtain a discharge of his mortgage.*

Where a building and loan association, incorporated under chapter 122 of the Laws of 1851 and the laws amendatory thereof, becomes insolvent and makes a general assignment for the benefit of creditors, a borrowing shareholder must, in order to obtain the cancellation of the mortgage given by him as security for the loan, pay the entire amount of such loan less the withdrawal value of the stock pledged by him as collateral thereto (viz., the dues paid by him upon the stock less the amount deducted for expenses), together with interest thereon; he is not entitled to be credited with the initial premium paid by him to secure the loan, or with the assessments paid by him upon his stock with interest on such sums.

SUBMISSION of a controversy upon an agreed statement of. facts, pursuant to section 1279 of the Code of Civil Procedure.

The Central City Building and Loan Association was incorporated on the 27th day of March, 1891, in pursuance of the provisions of chapter 122 of the Laws of 1851, and the laws amendatory thereof, for the purpose of affording its members a safe and profitable investment of their savings; to facilitate the purchase and improvement of real estate; to accumulate a fund and to loan such fund, or any portion thereof; and, until the 8th day of April, 1898, it was engaged in conducting the business for which it was created, with its principal office at the city of Syracuse. On the last-mentioned date the association, having become insolvent, executed to the defendant, Dorr Raymond Cobb, a general assignment for the benefit of creditors, without preferences.

Subsequently, and on the 28th day of April, 1898, schedules were duly filed by the assignee by which it appeared that the assets of the association amounted to $142,367.20, and that its total liabilities were $319,907.39, of which amount the sum of $60,451.50 was due to general creditors and the sum of $259,455.89 was due to shareholders.

On the 10th day of October, 1893, the plaintiff applied for and became the owner of ten shares of installment stock, Series B, of the

par value of $100 per share, and on the fifteenth day of November following he applied for a loan of $1,000, which application was granted on the twenty-seventh day of the same month ; and as security for such loan the plaintiff gave his bond, together with a mortgage upon premises at East Syracuse, in the county of Onondaga, and at the same time deposited with the association his ten shares of stock, the association retaining out of the money so loaned the sum of $100, which represented what was termed the " initial premium," and the further sum of $12.70 to defray the expense of drawing and recording the mortgage.

After the mortgage had passed into the hands of the defendant. as an asset of the association, by virtue of the general assignment, the plaintiff tendered him the sum of $318.85, and demanded that he surrender the mortgage and cancel the same of record.   This the defendant refused to do unless the plaintiff would pay the sum of $802.92.   It is conceded that the last-mentioned sum is due upon the mortgage, if the defendant's method of. computation is correct, but that the smaller sum is all that is due if the plaintiff has adopted the proper method of computation, and the sole question before the court is to determine which of these two methods is correct.

The plan adopted by defendant for computing the amount due upon said bond and mortgage is as follows : He charges the plaintiff with the full amount loaned and advanced him upon said bond and mortgage, viz., $1,000.   He credits plaintiff with the withdrawal value of the stock pledged, being the amounts paid by him as dues upon his shares of stock, to wit, the sum of $5 per month for fifty-five months, amounting to $275, less twenty per cent of said amount, which defendant charges to the expense fund, leaving a total amount to be credited upon said bond and mortgage to the date of said assignment of $220.   From and after the date of the assignment defendant charges the plaintiff with interest upon the balance found due upon said date, in accordance with the foregoing plan, at the rate of six per centum per annum.   He credits plaintiff with said payments made subsequent to said assignment, amounting to $28.68, together with interest thereon from the date of such payments, which were made upon the 23d day of April, 1898, and the 31st day of May, 1898, respectively, and upon this plan defendant finds the

total due from plaintiff to the defendant upon said 1st day of May, 1899, to be the sum of $802.92.

The plan adopted by plaintiff for computing the amount due upon said bond and mortgage is as follows : He charges plaintiff with the sum of money received by him from the Central City Building and Loan Association, with interest thereon at the rate of six per cent per annum, from the date of said loan to May 1, 1899. He credits plaintiff with all sums paid by him to said defendant or his assignor, the same being as follows : Initial premium paid on or about the 4th day of December, 1893, amounting to $100. He credits plaintiff with the sum of $15 paid on the 4th day of December, 1893; he also credits plaintiff with $13.34 paid on the 11th day of January, 1894; he credits plaintiff with fifty-three monthly installments of $13.34, each made on the last Saturday of each and every month from the last Saturday in January, 1894, to the last Saturday in May, 1898, with interest on each of said payments at the rate of six per centum per annum; said payments amounting in all to the sum of $707.02, said interest amounting in all to the sum of $167.68, making the total amount to be credited in accordance with the plan adopted by the plaintiff, amounting to $874.70, and leaving by said plan the amount due the defendant upon the 1st day of May, 1899, of $318.85, the amount tendered by said plaintiff to defendant.

*Homer Weston,* for the plaintiff.

*Edgar N. Wilson,* for the defendant.

ADAMS, P. J. :

The method adopted by the plaintiff to determine the amount due upon his mortgage is founded upon the theory that the association, having voluntarily transferred all of its property through the medium of a general assignment, has by that act deprived itself of the power to mature the plaintiff's stock at any time in the future, and that in consequence thereof it has violated its contract with the plaintiff and become liable to him for such damages as he has suffered by reason of its breach. In this view of the situation it is claimed that the true rule of damages would be followed by applying all payments made, with interest thereon, in reduction of the sum bor-

rowed, with interest on that sum ; and that by this method the sum remaining would represent the amount actually due upon the plaintiff's mortgage, and the amount he would be required to pay as a condition of having it discharged of record.

There would be much force in this contention if the plaintiff occupied the attitude of an ordinary borrower of money seeking to adjust a strict legal right between himself and his creditor. But such is not the case ; for his relation to the association and its stockholders was not that of a stranger. It was rather that of a copartner or co-member who, by virtue of his membership, acquired the right to borrow ; but this right carried with it the burden of assuming in common with the other stockholders all the risks incident to membership, including that of the insolvency of the association. This being so, the adjustment of the plaintiff's rights and interests demands the application of equitable, rather than legal, principles ; and when subjected to such a test the plaintiff's theory becomes untenable, inasmuch as its adoption would necessarily give him a preference over the other stockholders by enabling him to withdraw from the assets of the association premiums paid in by him under the requirements of its articles and by-laws, which surely would be in contravention of a fundamental principle of equity. (*O'Malley* v. *People's Building Assn.*, 92 Hun, 572 ; *Choisser* v. *Young*, 69 Ill. App. 252 ; *Strohen* v. *Franklin Saving & Loan Assn.*, 115 Penn. St. 279, 280 ; *Towle* v. *A. B. L. & I. Society*, 61 Fed. Rep. 446.)

In the case last cited a receiver had been appointed to take charge of the defendant's business, and he applied to the court for instructions as to the terms on which borrowers of the association might repay their loans, and also as to the claims which the receiver should advance in the event of compulsory foreclosure. In passing upon this application the court discussed at some length the very questions here presented, and in its opinion, delivered by GROSSCUP, J., made use of the following language : " These associations are essentially corporate copartnerships. They have no function except to gather together from small stated contributions sums large enough to justify loans. * * * The so-called insolvency is such a condition of the affairs of the association as reduces the available and collectible funds below the level of the amount of stock already

paid in.   *   *   *   I think it plain that when the condition of the association shows that instead of making profits it loses the principal of the contributing stockholders there is power in a court of equity to wind up its affairs upon purely equitable principles.   This will consist in calling in the loans and *paying out the funds thus received to the stockholders.*   It is not seriously disputed that on such an adjustment the borrower is under obligation to repay the actual sum received, together with interest thereon.   The first question is whether he is entitled to a credit of assessments paid upon his stock.   *I think not.   Such a credit practically would be paying par on his stock, a preference over other stockholders to which clearly he is not entitled.*"

By a similar course of reasoning the learned judge reached the conclusion that the borrower is entitled to credit for only such portion of premiums paid as the number of years or fractional parts thereof unlived by the association bear to the entire period of its normal life, which in the case he was considering was eight years. In the present case, however, the premium was paid in installments for the length of time that the loan had actually run, and, consequently, within the rule laid down in the case cited, the plaintiff would be entitled to no credit for premiums paid.   If this seems like a harsh rule it must be borne in mind that both borrower and stockholder are common sufferers by reason of the untimely and unfortunate termination of the association of which they were members, and that to credit the former with the entire amount of premiums paid would have the effect to reduce the impaired assets to that extent and thus deprive the stockholders of their just and proper share of such assets which are made up in large part of premiums paid in.   Such a result would certainly be inequitable to the stockholders and, consequently, one which should be avoided if possible.

We conclude, therefore, that the method employed by the defendant in ascertaining the amount actually due upon the plaintiff's mortgage is one which adjusts the burdens of the case as equally as may be and one which does not cast upon borrowers or non-borrowers more than their respective shares thereof.

But while adopting this method, we deem it proper to suggest that we are unable to see how, in view of the uncertainty which

must necessarily exist respecting the character of the assets which have come into the hands of the defendant and of the large outstanding indebtedness of the association, he can with perfect safety compute the amount due upon the mortgage of any borrower without first requiring that such borrower's stock be paid in full. This, however, is a matter which we are not called upon to determine under the terms of the submission, and, therefore, it is one concerning which the defendant will have to exercise his own judgment.

The defendant is entitled to judgment determining that the amount to be paid by the plaintiff, as a condition of having his mortgage discharged is the sum of $802.92, with interest from the date of the submission, and that the plaintiff's proceedings be dismissed with costs.

All concurred.

Judgment directed for the defendant dismissing the proceedings, with costs, and determining that the amount to be paid by the plaintiff, as a condition of having his mortgage discharged, is the sum of $802.92, with interest thereon from the date of the submission.