(54 App. Div. 142.)

### BREED et al. v. RUOFF et al.

(Supreme Court, Appellate Division, Second Department. October 26, 1900.)

1. BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—LOANS—INVOLUNTARY DISSOLUTION—EFFECT.

Where, before the maturity of defendant's mortgage to a building and loan association, it was dissolved for insolvency in an action by the people, and a receiver was appointed to wind up its affairs, defendant's mortgage became due, by virtue of such dissolution, on the appointment and qualification of the receiver; defendant being a member of the association, and therefore bound by the proceedings.

2. SAME—INTEREST PAID RECEIVER.

Where defendant's loan from a building and loan association became due before maturity by virtue of the compulsory dissolution of the association, he was entitled to credit for amounts paid as interest to the receiver after his appointment and qualification.

3. SAME—AMOUNT PAID AS DUES—CREDIT ON LOAN.

Where defendant's loan from a building and loan association became due before maturity by virtue of the compulsory dissolution of the association, he was not entitled to credit on his loan for the amounts which he had paid as dues, since they were not paid on account of the loan, but under his obligations as a member of the association.

4. SAME—MORTGAGE—AMOUNT DUE—VALUE OF STOCK—RIGHTS OF MEMBER.

A building and loan association advanced to defendant $2,500 as a loan on 50 shares of stock of $100 each, and as security took a mortgage for

$5,000, due in seven years, interest at 6 per cent., and defendant was to pay a certain amount as monthly dues on his stock until its maturity. Before the stock matured, the association was dissolved in an action by the people, and a receiver appointed to wind up its affairs. *Held*, that the receiver, on foreclosure of defendant's mortgage, was entitled to recover $2,500, but should allow as a credit thereon the approximate value of defendant's stock.

Submission of controversy under Code Civ. Proc. § 1279, between William C. Breed and another, as receivers, and Leonard Ruoff, Sr., and another.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Russell S. Johnson, for plaintiffs.

Thaddeus Kenneson (T. C. T. Crain, on the brief), for defendants.

JENKS, J.  As a loan to defendant, the association advanced one-half of the estimated maturity value of his 50 shares, namely $2,500, and he agreed to pay interest monthly thereon at the rate of 6 per cent. per annum, and also to continue his monthly payments of his dues upon the said 50 shares. The bond, mortgage, and assignment of the shares were executed as security. As neither premium in cash nor interest of any kind upon the premium bid was required, this case differs from the cases where, incident to the loan, an actual payment of bonus or of premium is exacted. The premium here falls within the definition of Woods, J., in Sullivan v. Association, 70 Miss. 94, 12 South. 590, as it "represents the discount agreed to be made upon the future and uncertain dividends of appellant's shares of stock in the association. It is the difference, estimated by the association and its borrowing member, between the par value of the member's shares of stock and their present real value. It is the bonus which appellant might lawfully agree to pay for a present advancement in cash of a sum certain for the virtual transfer to the association for his shares of stock, which, in the final winding up of its affairs, may realize the sum actually received by the member, together with the premium bid, or which may not." It was not contemplated that the $2,500 should ever be repaid in cash, for it was, in effect, an advance of the supposed maturity value of the shares. And so the bond reads that it shall be harmless if the debtor shall pay on or before seven years from date $5,000, as aforesaid, as provided in the articles of association of said corporation, and also all premiums, fines, and dues which may be charged according to the said articles of association; and such are the qualifying provisions attached to repayment when elsewhere mentioned. Thus the advantage promised to the defendant was an *immediate loan*, to be canceled, when due, by the maturity value of his shares; while his burden was payment meanwhile of his dues upon the 50 shares, and of the said interest upon the cash lent to him. The record states that the defendant "has paid as dues upon the said stock so held by him the sum of $30 per month up to August 1, 1899, being the sum of $1,680, to said association, out of which the sum of $5 per month, being in all the sum of $280, was deducted therefrom for expenses of

said association, and since the appointment of said receivers said defendant has paid the sum of $30 in addition thereto thereon; that the said defendant has, on January 1, 1898, paid the sum of $5 fines thereon; that he has also paid the sum of $12.50 per month each month up to August 1, 1899, being the sum of $687.50 to said association, as interest on said loan, and, in addition thereto, the sum of $12.50 since, as interest to said receivers." Judgment of dissolution of the corporation, based upon its insolvency, was entered on December 9, 1899, upon the suit of the people. Thus vis major has stayed the association from further performance of its contract, and the defendant is, of course, held excused on his part. The life of the association as a going concern being ended, there must be a winding up. The plaintiffs contend that the loan is now due, and that they may proceed upon the mortgage security. The defendant insists that the mortgage is not due, inasmuch as it is provided therein that it is to run until January, 1902.

Thomp. Bldg. Ass'ns (2d Ed.) says:

"The courts have all laid down different rules as to the amount the borrower should repay when the association becomes insolvent, and goes into the hands of a receiver. The authorities are agreed that in such an event the mortgage becomes due."

End. Bldg. Ass'ns says:

"On one point there seems to be a general consensus, although a distinct enunciation of the principle is only of very recent date. It is this: 'Upon premature dissolution of the association the advanced members may be compelled to pay forthwith the balances due from them on their securities, although the latter be given in terms only for the payment of installments.'"

See, too, Towle v. Society (C. C.) 61 Fed. 446; Weir v. Association (N. J. Ch.) 38 Atl. 643; Curtis v. Same, 69 Conn. 6, 36 Atl. 1023; Windsor v. Bandel, 40 Md. 172, 177; Leahy v. Association (Wis.) 76 N. W. 625; Strohen v. Association, 115 Pa. St. 273, 8 Atl. 843; People v. Lowe, 117 N. Y. 175, 22 N. E. 1016.

Contending contra, the learned counsel for the defendant cites Thornton & Blackledge on Building Associations, 397, and the first case cited by them, namely, Kemp v. Wright, 64 Law J. Ch. 59. But in Kemp v. Wright the lord chancellor makes a distinction that would seem to array the case on this point against the defendant. Kemp v. Wright did not arise from a compulsory winding up, but from an instrument of dissolution; that is, from a voluntary act of the association. Speaking of the contention that the loans were immediately due, the lord chancellor said:

"There is nothing in the deed itself to say that this was to be the effect of the deed of dissolution; but it is said that this has been held to be the effect when the court makes a winding-up order, and that, therefore, it must also be so when the dissolution is the act of the members. That is a consequence that I am not able to follow, or to see the force of. A winding-up order is the act of the court; it is a vis major, however it be procured."

And Smith, L. J., says:

"Mr. Justice Kekewich arrived at his conclusions in this case by holding that a deed of dissolution was equivalent to a winding-up order of this court. There is no authority to support that view."

If the defendant had not been a member, he could not have been a borrower, and by becoming a borrower he did not cease to be a member. End. Bldg. Ass'ns, § 45; Thomp. Bldg. Ass'ns, § 34. He cannot now shake off his membership responsibilities or liabilities to claim that his sole relation to the association is that of a debtor, freed from his obligation in consequence of the association's compulsory breach of the contract. Rather he is to be regarded as a member who had, perforce of membership, obtained a loan from the association on terms now impossible of fulfillment in that the common venture has been arrested by the people of the state. And equity will regard him as a member, that equality may be established between him and his fellow venturers. To hold that such a termination of the life of the association as a going concern discharges the loan absolutely, and thereby releases the security, would result in confiscation of all assets represented by loans (possibly a great part thereof) for the benefit of the borrowing members respectively, and to the exclusion of the nonborrowing members. So far as Bank v. Whitmore, 25 App. Div. 491, 49 N. Y. Supp. 862, is authority for such conclusion, I think it disregards the principle laid down in People v. Lowe, 117 N. Y. 175, 22 N. E. 1016, where the court, per Earl, J., speaking of the contention of the plaintiff that the society was dissolved by voluntary action, says:

"But the rule of equity must, nevertheless, prevail among the members. Each member for each share held by him was entitled to precisely the same amount in the assets of the society, and such assets should be distributed accordingly. Those who were debtors, if they owed more than their distributive share of the assets, should pay the balance to the society, and upon such payment should have their mortgages canceled. If they owed less than their distributive shares, they should have their mortgages canceled, and receive the balance, so as to make them equal with the creditor members. The claim made on behalf of the people and the five members represented by them in this case, that the three debtor members were entitled to have their mortgages canceled, and that the creditor members * * *, is utterly without foundation; and the counsel for the defendant has a proper conception of the rights of his clients when he claims that in winding up the affairs of the society the trustees are bound to distribute its assets among its members equally according to their respective shares."

In that case (no interest on the loan being required) Earl, J., further says:

"If he pays or is charged with the principal due upon his mortgage, he has discharged his whole duty to the society as a debtor. In other respects he stands upon a footing of precise equality with the creditor members. * * * And yet their [i. e. the debtor members'] claim is that because the society has come to an end, although prematurely, they are absolutely entitled to have their mortgages canceled without payment. No claim could be more preposterous, and there is no justification for it in the law or in the articles of association of the society."

I take it that the rule indicated in People v. Lowe, supra, must be applied in the winding up of the association with reference to the rights of the members thereof. Hannon v. Cobb, 49 App. Div. 480, 63 N. Y. Supp. 738. See, too, Strohen v. Association, supra; Rogers v. Hargo, 92 Tenn. 35, 20 S. W. 430; Thornt. & Bl. Bldg. & Loan Ass'ns, § 355. The loan, then, of $2,500, must be regarded as due

when the life of the association was terminated; that is, upon the appointment and qualification of the receivers.

There is this further question: "What, if any, credits against the loan should be allowed to the defendant?" He has received $2,500 in cash as a loan, and under his contract has paid legal interest thereon. He is indebted, then, to the association, at the time of the appointment and qualification of the receivers, in the said sum of $2,500. He should, however, be credited with the $12.50 paid as interest to the receivers. He is not entitled to any credit against the loan of the dues paid by him; for, as stated, he is to be regarded as a member of the association none the less that he is a borrowing member, and he agreed to pay dues as a member, not as a borrower, and must have paid them whether he ever became a borrower or not. Under the terms of the association or of the loan, the dues were not paid on account of the loan, nor were they to be credited against the loan pro tanto. Loan Co. v. Fatty, 1 Abb. Dec. 347. They were paid on the stock towards the establishment, maintenance, and growth of the loan fund that was, so to speak, a sinking fund, ultimately to extinguish the stock, and thereby to cancel the loan. Their sole relation to the loan was that the "security is conditioned upon their continuous payment." Payments, therefore, on account of dues upon the stock, are not reductions of the loan; certainly not in the absence of any provision therefor. Hannon v. Cobb, supra; End. Bldg. Ass'ns, § 478; Thomp. Bldg. Ass'ns, § 171; Barker v. Bigelow, 15 Gray, 130; Association v. Furey, 47 N. J. Eq. 410, 20 Atl. 890; Association v. Sutton, 35 Pa. St. 463; Post v. Association, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201; State v. Hornbacker, 42 N. J. Law, 635; Thornt. & Bl. Bldg. & Loan Ass'ns, § 168. I am sustained in my conclusions in the main by the decisions heretofore cited. The authorities that the borrower is to be credited with the dues seem to rest upon the theory that the transaction is to be regarded after the failure as one of an ordinary loan. But this would, as I have stated, ignore the existing relation of the debtor as a member of the association; and such credits would be, in effect, paying dividends to the defendant, after the association was in the hands of a receiver through its insolvency, of 100 per cent. of the amounts so credited to him, and hence there would be a preference pro tanto as against his fellow members of the same class. It will be found that very nearly all the cases that authorize such a credit show either that the dues were, under the articles of association, to be applied in so many words to the loan,—e. g. Cook v. Kent, 105 Mass. 246; Brownlie v. Russell, 8 App. Cas. 235,—or that the contract was held usurious, contrary to the decisions in this state. Association v. Read, 93 N. Y. 474; Loan Co. v. Samuels, 43 App. Div. 386, 60 N. Y. Supp. 91. The doctrine applied in Bank v. Whitmore, supra, is not only open to the foregoing objections, but would seem to be at variance with that laid down in People v. Lowe, supra, that every member was to stand on equal footing, whether debtor or creditor member; and that each debtor member, to that end, should pay what he owed,—this being, in the case of a mortgagor, the principal due upon his mortgage,—so that each member for each share held by him might be entitled to precisely

the same amount in the assets of the society. If the dues were, within the contemplation of the court in People v. Lowe, supra, to be applied upon the debt, as a dividend of 100 per cent., the debtor's right would not there be stated as that of a sharer in the assets, or as only a sharer therein. Further, in this case not only did the articles of association provide in express terms that the dues should be paid as upon the stock, but the agreement of facts reads that the defendant "has paid, as dues upon the said stock so held by him, the sum of $30 per month," etc. But the defendant is entitled to a credit of the $30 paid as dues after the appointment and qualification of the receivers. The fines were the penalties of his personal delinquencies, and went into the funds of the association. Towle v. Society, supra.

The final question is as to the practical relief. The plaintiffs ask judgment of foreclosure and sale to recover $5,000, with interest, and expenses, with a deficiency provision. The defendant seeks a judgment denying the right of foreclosure, or, if foreclosure be granted, then a judgment that the defendant be credited on account of the principal of his mortgage with all payments, together with certain interest thereon, and that the receivers reassign the stock now held as collateral security to defendant, that he may share in any final distribution, so that any dividend may be added to his payments to the increase of his credits upon the principal of the mortgage, and that the judgment of foreclosure and sale be postponed until the sum of his credits be finally cast up upon the accounting of the receivers. While we decide that the principal of the loan, namely, $2,500, is now owing to the receivers from the defendant, if there is any dividend presently his due as a member, no good reason appears why the defendant should be required to pay the full amount of the loan in the first instance. On the other hand, there may well be a hardship worked by a disregard of the equity that should strike a balance between his debt and his dividend. If the receivers, by marshaling assets and liabilities, and by allowing for expenses, cannot determine, they can at least approximate, the prospective value of each share of stock, and hence the probable dividend due each shareholder, sufficient for the purpose at hand. Naturally, such estimate would be conservative, and therefore provision should be made for any possible overpayment. These views are in accord with the valuable discussion of Mr. Endlich in his work cited. Equity demands that this course should be taken. The parties, then, may, within 20 days after this opinion is handed down, file an additional statement such as we are authorized to require by section 1281 of the Code of Civil Procedure, to the end that we may render a judgment in accord with the views expressed in this opinion. In case they fail to submit such statement, then the submission will be dismissed, without costs to either party. All concur.