(44 Misc. Rep. 296.)

### PEOPLE v. NEW YORK BUILDING LOAN BANKING CO.

### In re MONTAGUE.

(Supreme Court, Special Term, New York County. July, 1904.)

1. BUILDING ASSOCIATIONS—INSOLVENCY—RIGHTS OF BORROWING MEMBER.

An owner of property entered into an agreement with a building and loan association in 1897, under which it agreed to carry a mortgage on his property, pay interest thereon, and the principal on maturity of the stock; the owner agreeing to pay the monthly premium on the stock in the meantime, and give a mortgage for the amount of the mortgage on his property and the premium, and to pay interest thereon until the maturity of his stock, and assign it to the building association. Both parties performed these stipulations until a permanent receiver of the company was appointed in 1903. The owner of the property petitioned the court that the receiver pay him the difference between what he has

paid in and the loan company had paid out. *Held,* that the petitioner, being both a borrower from the company and also a member of it, is entitled to no interest on any sum allowed him, but will be credited with the dues he has paid; this amount serving to fix a basis to determine his share of the net assets as a stockholder, but the company should be allowed such proportionate part of the premium as the period of insolvency bears to the entire term of the contract.

Action by the people against the New York Building Loan Banking Company. Application of Peter J. Montague, a stockholder, asking that the receiver of the defendant pay him the difference between the amount paid in by him and the amount paid out by the company, with interest. Amount due petitioner determined.

Charles R. Hall, for petitioner.
Charles W. Dayton, for receiver.

DAVIS, J. The defendant, the New York Building Loan Banking Company, is insolvent and in the hands of a permanent receiver. On or about December 1, 1897, the petitioner, Peter J. Montague, became the owner of 300 shares of class "A" stock, issued by the defendant. His primary purpose in subscribing for 300 shares was to bring about the payment and cancellation of an existing mortgage of $25,000 on his premises, No. 60 Court street, Brooklyn. The company undertook to carry this mortgage of $25,000, agreeing to pay off the principal on or before the maturity of the stock, and in the meantime to pay the interest (5 per cent.) on the mortgage. In consideration of the company's agreement to issue to him the 300 shares of stock, and to carry and finally to pay off the mortgage, Montague agreed to pay the company a premium of $5,000; to make a monthly payment of $75 due on the 300 shares; to execute in favor of the company a mortgage of $30,000 on said premises, and pay interest thereon at the rate of 6 per cent.; the interest to be paid monthly at the time of the payment of the dues. This made a total monthly payment of $226, and these payments were to continue until the stock matured, December 1, 1909. The premium of $5,000 is included in the $30,000 mortgage. He also assigned his stock to the company. The assignment, as well as the $30,000 mortgage, was made to secure the monthly payments of $226. It was expected that at the end of the maturing period, December 1, 1909, the 300 shares of stock would be paid up in full, and that Montague would have his premises free and clear of both mortgages. Both parties lived up to the agreement for 69 months and 14 days. The company then became insolvent, and a temporary receiver was appointed September 14, 1903. Under an order of this court the $30,000 mortgage has been satisfied. No part of the $25,000 mortgage on the petitioner's premises has been paid. At the date of the appointment of the temporary receiver, Montague had made the following payments to the company: $10,350, interest on the $30,000 mortgage, and $5,175, as dues on 300 shares of stock, making in all $15,525. In the meantime, his stock has been maturing, and the company has paid on account of interest on the $25,000 mortgage, at the rate of 5 per cent., the sum of $6,770.83. The petitioner asks that the receiver be required to pay him the difference between the amount paid in by him and the amount paid out by

the company—that is, $8,754.17—with interest for the average time to September 14, 1903, making a total of $10,286.12; and in the event of a rejection of the method just referred to, he asks the court to direct the receiver to pay him $3,974.27, with interest thereon from the date of the appointment of the receiver, reserving the amount of the dues paid by the petitioner and interest thereon as a basis for a claim to share pro rata with other stockholders at the final distribution. Neither of these methods of settlement appears to the court to be equitable, because they both substantially ignore the just claim of the company to a portion of the premium agreed to be paid by the petitioner. The relation between the petitioner and the company is not merely that of borrower and lender; he is also a member of the company. "The question emancipates itself, therefore, from legal or contract technicalities, and reduces itself to one of simple equity and fair play." Towle v. American B. L. & I. Soc. (C. C.) 61 Fed. 448. It follows, therefore. that whatever amount shall be allowed the petitioner, he is not entitled to any interest on that amount. He should be credited with the amount paid as dues; this amount serving as a basis for the fixing of his pro rata share of the net assets as a stockholder. Under authorities in this state and in the federal courts, some part of the premium agreed to be paid should be regarded as earned by the company. Hannon v. Cobb, 49 App. Div. 480, 63 N. Y. Supp. 738; Riggs v. Carter, 77 App. Div. 580, 79 N. Y. Supp. 177; Breed v. Ruoff, 54 App. Div. 142, 66 N. Y. Supp. 422; MacMurray v. Gosney (C. C.) 106 Fed. 11; Choisser v. Young, 69 Ill. App. 256. The company kept its agreement for 69$^{7}/_{15}$ months. One hundred and forty-four months being the full term of the agreement, it should be allowed, therefore, to retain a proportionate part of $5,000 as earned premium, i. e., $2,412.04. Following the rules laid down in the cases referred to, I think it would be just to all parties to allow the company to retain $2,412.04 as earned premium, and $5,175 as dues on the 300 shares of stock, and it should be credited with $6,770.73, interest paid by it on the $25,000 mortgage. If the total of these amounts be deducted from the whole amount paid by Montague —i e., $15,525—it will leave $1,167.13, which should be returned to the petitioner. This amount, however, should not be paid until final accounting, when it can be determined whether or not there is money sufficient to satisfy the claims of all others similarly situated. The diligence of the petitioner in making this application should not give him a preference over others having the same kind of claim against the company.

Ordered accordingly.