(101 App. Div. 484.)

### PEOPLE v. NEW YORK BUILDING LOAN BANKING CO.

### In re MONTAGUE.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—RIGHTS OF BORROWING STOCKHOLDERS.

On the insolvency of a building and loan association the rights and liabilities of borrowing stockholders should not be determined until it has been ascertained what the net assets are.

Appeal from Special Term, New York County.

Action by the people against the New York Building Loan Banking Company. Petition by Peter Montague, a stockholder, asking that the receiver of the defendant be required to pay petitioner the excess between the amount paid by him to the defendant and the amount paid out by it in his behalf. From a decree (89 N. Y. Supp. 877) determining the amount due petitioner, he appeals. Modified.

The facts as well as the conclusions upon which the order was based are clearly stated in the opinion of the learned judge at Special Term as follows:

"The defendant, the New York Building Loan Banking Company, is insolvent, and in the hands of a permanent receiver. On or about December 1, 1897, the petitioner, Peter J. Montague, became the owner of three hundred shares of Class A stock issued by the defendant. His primary purpose in subscribing for three hundred shares was to bring about the payment and cancellation of an existing mortgage of $25,000 on his premises No. 60 Court

street, Brooklyn.  The company undertook to carry this mortgage of $25,000, agreeing to pay off the principal on or before the maturity of the stock, and in the meantime to pay the interest (5 per cent.) on the mortgage.  In consideration of the company's agreement to issue to him the three hundred shares of stock and to carry and finally to pay off the mortgage, Montague agreed to pay the company a premium of $5,000, to make a monthly payment of $75 dues on the three hundred shares, to execute in favor of the company a mortgage of $30,000 on said premises, and pay interest thereon at the rate of 6 per cent., the interest to be paid monthly at the time of payment of the dues.  This made a total monthly payment of $225, and these payments were to continue until the stock matured, December 1, 1909.  The premium of $5,-000 is included in the $30,000 mortgage.  He also assigned his stock to the company.  This assignment, as well as the $30,000 mortgage, was made to secure the monthly payments of $225.  It was expected that at the end of the maturing period, December 1, 1909, the three hundred shares of stock would be paid up in full, and that Montague would have his premises free and clear of both mortgages.  Both parties lived up to the agreement for sixty-nine months and fourteen days.  The company then became insolvent, and a temporary receiver was appointed September 14, 1903.  Under an order of this court the $30,000 mortgage has been satisfied.  No part of the $25,000 mortgage on the petitioner's premises has been paid.  At the date of the appointment of the temporary receiver, Montague had made the following payments to the company:  $10,350 interest on the $30,000 mortgage, and $5,175 as dues on three hundred shares of stock; making in all $15,525.  In the meantime his stock has been maturing, and the company has paid on account of interest on the $25,000 mortgage at the rate of 5 per cent. the sum of $6,770.83.  The petitioner asks that the receiver be required to pay him the difference between the amount paid in by him and the amount paid out by the company—that is, $8,754.17—with interest for the average time to September 14, 1903, making a total of $10,286.12; and in the event of a rejection of the method just referred to he asks the court to direct the receiver to pay him $3,974.27, with interest thereon from the date of the appointment of the receiver, leaving the amount of the dues paid by the petitioner and interest thereon as a basis for a claim to share pro rata with other stockholders at the final distribution.  Neither of these methods of settlement appears to the court to be equitable, because they both substantially ignore the just claim of the company to a portion of the premium agreed to be paid by the petitioner.  The relation between the petitioner and the company is not merely that of borrower and lender.  He is also a member of the company.  'The question emancipates itself, therefore, from legal or contract technicalities, and reduces itself to one of simple equity and fair play.'  Towle v. Am. B. L. Soc. (C. C.) 61 Fed. 448.  It follows, therefore, that, whatever amount shall be allowed the petitioner, he is not entitled to any interest on that amount.  He should be credited with the amount paid as dues, this amount serving as a basis for the fixing of his pro rata share of the net assets as a stockholder.  Under authorities in this state and in the federal courts, some part of the premium agreed to be paid should be regarded as earned by the company.  Hannon v. Cobb, 49 App. Div. 480, 63 N. Y. Supp. 738; Riggs, Receiver, v. Carter, 77 App. Div. 580, 79 N. Y. Supp. 177; Breed v. Rouff, 54 App. Div. 142, 66 N. Y. Supp. 422; McMurray, Receiver, v. Gosney (C. C.) 106 Fed. 11; Choisser v. Young, as Receiver, 69 Ill. App. 256.  The company kept its agreement for $69^7/_{15}$ months.  One hundred and forty-four months being the full term of the agreement, it should be allowed, therefore, to retain a proportionate part of $5,000 as earned premium, i. e., $2,412.04.  Following the rules laid down in the cases referred to, I think it would be just to all parties to allow the company to retain $2,412.04 as earned premium (and $5,175 as dues on the three hundred shares of stock), and it should be credited with $6,770.75 interest paid by it on the $25,000 mortgage.  If the total of these amounts be deducted from the whole amount paid by Montague—i. e., $15,525—it will leave $1,167.13 which should be returned to the petitioner.  This amount, however, should not be paid until final accounting, when it can be determined whether or not there is money sufficient to satisfy the claims of all others similarly situated.  The diligence of the petitioner in making this ap-

plication should not give him a preference over others having the same kind of claim against the company."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Charles R. Hall, for appellant.
Charles W. Dayton, for respondent.

O'BRIEN, J. We think the application was premature, and that the prescribing of any fixed rule at the present time is unnecessary, and may, in the end, embarrass, rather than aid in, the final distribution of the assets of this insolvent corporation. Thus, with regard to the subject of dues which were in substance payments upon the shares held by the petitioner, the conclusion of the Special Term that this amount should be credited to the petitioner, and should serve "as a basis for the fixing of his pro rata share of the net assets as a stockholder," is undoubtedly correct. In regard to the claim for the entire amount paid as premium, however, there is considerable conflict as to whether, by reason of the insolvency of the company, the latter forfeits its right to any part of the amount paid, or whether all or some part of it should be regarded as earned by the company. There are cases which support the rule applied by the Special Term that some part of the premium agreed to be paid should be regarded as earned by the company. See Hannon v. Cobb, 49 App. Div. 480, 63 N. Y. Supp. 738; Riggs v. Carter, 77 App. Div. 582, 79 N. Y. Supp. 177; Breed v. Rouff, 54 App. Div. 142, 66 N. Y. Supp. 422; Choisser v. Young, 69 Ill. App. 252; Mac-Murray v. Gosney (C. C.) 106 Fed. 11. On the other hand we find in Endlich on Building Associations (2d Ed.) § 531, the rule stated as follows:

"Upon the basis of all the decisions examined it may be safely laid down that the clear weight of authority rejects the enforcement of any part of the premium. And in reason and fairness this must be so. The premium is not a payment in advance. * * * Hence if, at any stage, the society, breaking down, fails to perform its part of the bargain, the promise to pay it the premium loses the consideration upon which it was based, and ought to be regarded as wholly abrogated. To attempt to apportion the premium is simply to treat it as additional interest. To regard it as something with which the borrower has parted—as something which the society has earned, as assets in its hands before it has done that which entitled it to retain the premium—is to misconceive its true character and office."

In support of this view we have the following cases: Strohen v. The Franklin Savings Fund and Loan Association, 115 Pa. 273, 8 Atl. 843; Wier v. Granite St., etc., 56 N. J. Eq. 234, 38 Atl. 643; Moran v. Gray (N. J. Ch.) 38 Atl. 668; Rogers v. Rains, 100 Ky. 295, 38 S. W. 483; Bank Commissioners v. Association, 68 N. H. 554, 44 Atl. 605; Curtis v. Association, 69 Conn. 6, 36 Atl. 1023, 61 Am. St. Rep. 17; Hale v. Kline, 113 Iowa, 523, 85 N. W. 814; Coltrane v. Baltimore B. & L. Ass'n (C. C.) 110 Fed. 293; Same v. Blake, 113 Fed. 785, 51 C. C. A. 457; Barry v. Friel (C. C.) 114 Fed. 989; Riggs v. Capital Brick Co. (C. C.) 128 Fed. 491.

While the statement of the rule to be applied is thus couched in language seemingly opposed and conflicting, we think the authori-

ties can to some extent be reconciled by having in mind the time when and the facts upon which the courts are required to decide the questions presented. Where, in the course of the administration of one of these insolvent building and loan associations or corporations, and before the final accounting, it becomes necessary to adjust the rights of the receiver and the claimant, the courts in this state have been careful to apply a rule which would be perfectly just as between the receiver and the claimant, and have been equally careful not to apply any method or rule which would impair or affect the rights of other claimants upon the final distribution by the receiver. By way of illustration, to take the cases which have most frequently arisen in this state, and from which the learned judge at Special Term deduced the rule which he thought should be here applied, we find that the judges, while compelled to determine the then existing rights of the parties before it, were sedulously careful to void applying any rule which would destroy the rights of others who were not parties before the court, and who, therefore, could not be heard. Thus, in Riggs v. Carter, supra (affirmed 173 N. Y. 632, 66 N. E. 1115), where an action was brought by the receiver of an insolvent building and loan association against a borrowing shareholder to foreclose a mortgage executed by him, it was held (headnote) that:

"The court is not, in the absence of any proof upon the subject, or any request in regard thereto, required to approximately determine the value of the shareholder's stock to the end that he may be relieved from his mortgage to the extent of his interest in the assets of the association."

And in Roberts v. Cronk, 94 App. Div. 171, 88 N. Y. Supp. 103, wherein a similar action was brought, it was held (headnote), that:

"The shareholder is not entitled to be credited upon the mortgage in the foreclosure action with the amount of dues paid by him to the association, or with the amount of the monthly premium which he paid as a bonus for the loan. He will, however, upon the final adjustment of the affairs of the association, be entitled to credit for such payments, the amount of such credit depending upon the amount of the net assets of the association."

In Hall v. Stowell, 75 App. Div. 21, 77 N. Y. Supp. 953, it is said:

"In such cases the better rule seems to be that the borrower be charged with the money received from the corporation and the legal rate of interest thereon, and be credited with such payments as are referable to the loan itself, and not to the stock. This rule is based upon the theory that the relations of a member as a shareholder and a borrower are separate and distinct; that as shareholder he should bear his proportionate share of the loss, but as borrower he should have the benefit of the rescission of the contract, and should repay what he has received less what he has paid on account thereof. Strohen v. Franklin Saving & Loan Ass'n, 115 Pa. 273, 8 Atl. 843; Post v. Building & Loan Ass'n, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201; Endl. Building Ass'ns (2d Ed.) §§ 514, 515, 531; Rochester Savings Bank v. Whitmore, 25 App. Div. 491, 49 N. Y. Supp. 862; Hannon v. Cobb, 49 App. Div. 480, 63 N. Y. Supp. 738; Breed v. Rouff, 54 App. Div. 142, 66 N. Y. Supp. 422."

Hall v. Stowell was cited with approval in Roberts v. Cronk, supra, but the conclusion reached was that the shareholder was not entitled to be credited upon the mortgage in the foreclosure action with the amount of dues paid by him to the association, or with the

amount of the monthly premium which he paid as a bonus for the loan. As therein said:.

"The defendant cannot now be credited upon his loan with the amount paid by him as dues or premiums. When the affairs of the association are finally wound up, he will, of course, have credit for all of the payments so made by him, the amount to be then credited being dependent upon the amount of its net assets."

On the other hand, we have in other jurisdictions cases where the rule stated by Endlich on Building Associations, supra, has been applied. Thus, in Strohen v. Franklin Savings & Loan Ass'n, supra, where the action was brought by a receiver of an insolvent building association to foreclose a mortgage given to secure the payment of a loan, the court, among other things, in the opinion said:

"In view of the failure of the company, the consideration or inducement for giving this large premium has failed, or at least has failed in part. * * * The insolvency of the company, as before observed, puts an end to its operations as a building association. To a certain extent it also ends the contract between it and its members respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors and between the members themselves. * * * The damages should be assessed by charging the defendant with the sum actually received on his mortgage, with interest for the same, and crediting him with all actual payments of interest. But his payments upon his stock are not to be credited on the mortgage as payments of either principal or interest."

The only difference between this case and the others relied upon by the appellant and the decisions in our own state where the question arose during the course of administration and had to be settled is that in the former the court undertook to apply the rule with regard to adjusting what credit should be allowed to the member or shareholder for the premium paid, while in our own jurisdiction the rule that has been applied has been to reserve this question until the determination can be reached as to what will be the net assets applicable to payment of the liabilities of the corporation. When that time comes, depending entirely upon the amount of assets and the rights and equities of the different claimants, the court will be in a position to apply such a rule in determining the rights of the respective claimants as will do equity as between them and adjust the burdens equally.

In marshaling the assets and liabilities of this insolvent corporation, it will be admitted, we assume, that it should be done upon an equitable basis, and it is axiomatic that equality is equity. In the administration of an insolvent corporation, where there are different claimants who stand upon a different footing, and who have diverse and conflicting claims, it is difficult to apply the principles of equality and equity without having all the facts with respect to the condition of the insolvent estate before the court. It is only where the assets are realized, and when upon an accounting with a view to final distribution the assets can be fully marshaled, that it is practicable to determine upon a basis of settlement which will be fair and equitable to all creditors. Upon marshaling the assets of this corporation for the purpose of final distribution, we assume

there will be a fund which is applicable to the payments of claims which fall within the class of which the petitioner is a member; and it is but just that every member should be treated alike.

It will be noticed that the learned judge at Special Term deemed it prudent, after applying the rule which he thought was just, to direct that the amount "should not be paid until final accounting, when it can be determined whether or not there is money sufficient to satisfy the claims of all others similarly situated." Upon such final accounting it may appear that the condition of the assets is such as to require the application of a different rule from that prescribed by the Special Term in order that equity be done as between all the claimants. We think that the proper disposition to have made of the motion would have been to dismiss the application, refusing, because unnecessary at this stage, to lay down any rule, or to determine the state of the account as between the claimant and the receiver.

We think, therefore, that the application was premature, and that the order should be modified by dismissing the application, and, as so modified, affirmed, without costs. All concur; VAN BRUNT, P. J., in result.