HUNTINGTON SAVINGS AND LOAN ASSOCIATION, Plaintiff, *v.* JOHN J. COCKER and Others, Defendants.

County Court, Suffolk County, May 23, 1933.

*Isaac R. Swezey*, for the plaintiff.

*Munder & Weissman* [*Fred J. Munder* of counsel], for the defendants Cocker.

HAWKINS, J.   John J. Cocker and wife were members of the Huntington Savings and Loan Association.   They obtained a loan from said association which was secured by a mortgage on their property, and also by a pledge of their shares in the association upon which they had paid about $579.   The Cockers conveyed the property to Ernest C. Bicknese and wife, subject to the first mortgage.   The plaintiff has commenced an action to foreclose the mortgage against all the foregoing defendants and the question is whether the plaintiff must first foreclose its mortgage on the real property before proceeding against the stock pledged as collateral.   There appears to be no question but what the by-laws and charter of a savings and loan association constitute the agreement between the shareholders and the association and bind not only every holder of the stock, but the association as well.   In the instant case section 71 of the by-laws contains the following provision pertinent to the issue here involved: "Any loan made to a member may be repaid at any time provided the member shall pay the principal due thereon, less the withdrawal value of the shares transferred as security therefor, the premium earned and the interest accrued at the date of such payment, and all sums advanced by the association for taxes, assessments, or insurance premiums, with interest thereon; and in addition thereto  *  *  * *whenever any mortgage is foreclosed,* the withdrawal value of the shares transferred and pledged to the association for the payment of the loan shall be applied to the extinguishment of the indebtedness of the member as hereinbefore determined, and his rights under such shares shall terminate."

The defendants Cocker did not cease to become members of the association by becoming borrowers.   Their rights as members of the association and responsibilities as members of the association are separate and distinct from their obligations and liabilities as debtors to the association.   Inasmuch as each case stands on its own feet because the contract determines the relationship, analogous cases cannot control the decision of the court unless the terms of the contract are identical.   A reading of the New York citations relied upon by the plaintiff clearly establishes the dual capacity of a shareholder in a loan association as both a member and a debtor. The case of *Breed* v. *Ruoff* (54 App. Div. 142) is authority for the proposition ·that where a building and loan association becomes insolvent, in all equity a borrowing member should have the amount of his prospective dividend set off against his indebtedness.   This ruling, however, is primarily for the benefit of the shareholder and is intended to alleviate his condition when his contract with the association becomes  abrogated by a *vis major,* in that case

the involuntary bankruptcy of the association. The court, in the opinion by Judge JENKS, discusses the rights of a member (at p. 148) as follows: " If the defendant had not been a member, he could not have been a borrower, and by becoming a borrower, he did not cease to be a member. (End. Bldg. Assns. § 45; Thomp. Bldg. Assns. § 34.) He cannot now shake off his membership responsibilities or liabilities to claim that his sole relation to the association is that of a debtor, freed from his obligation in consequence of the association's compulsory breach of the contract. Rather, he is to be regarded as a member who had, perforce of membership obtained a loan from the association on terms now impossible of fulfillment, in that the common venture has been arrested by the People of the State. And equity will regard him as a member, that equality may be established between him and his fellow venturers. To hold that such a termination of the life of the association as a going concern discharges the loan absolutely, and thereby releases the security, would result in confiscation of all assets represented by loans (possibly a great part thereof) for the benefit of the borrowing members respectively, and to the exclusion of the non-borrowing members."

The case of *Robinson* v. *Spencer* (72 App. Div. 493) was also one where the association had become insolvent and the court held that the shareholder was entitled to have the dividend due him on his shares approximately ascertained and credited against his indebtedness. The same rule was reiterated by the court in *Riggs* v. *Carter* (77 App. Div. 580) and *Preston* v. *Rockey* (185 N. Y. 186). In both cases the association had become insolvent and the court held that where a savings and loan association becomes insolvent and passes into the hands of a receiver and is no longer able to carry out its contract with the borrowing shareholders, then the latter should be relieved from their contracts with the association as of the date of the appointment of the receiver and an equitable adjustment made.

It would assuredly be an injustice to invoke the equitable rules enunciated by the courts for the benefit of the shareholders, and then turn the same against them. There is no reason in this case for the confusing of the shareholder with the borrower. In fact, such procedure would be violative of all equity. There is no reason why the property should not first be sold in order to determine the amount of the deficiency. If there is no deficiency, the Cockers are entitled to the value of their shares. If there is, then and only then should the shares pledged as collateral be employed to satisfy the deficiency judgment.

There is nothing before the court which would indicate that the

real property is an insufficient security for the amount of the mortgage. The defendants Cocker have disposed of their equity in the property to the second mortgagee by way of deed. Evidently the second mortgagee deemed such equity to be worth the amount of the second mortgage, and accordingly it is altogether possible that when the first mortgage is foreclosed there will be no deficiency. To allow the plaintiff to appropriate the shares of stock would simply benefit the present owner of the property who has never contributed a cent toward the purchase of such stock and has no interest therein.

Moreover, section 71 of the by-laws provides that whenever any mortgage is foreclosed, the shares of stock should be applied to the extinguishment of the indebtedness of the member. It would appear that the intention of the framers of this by-law was that such collateral security should be applied only after the mortgage security had been exhausted. In any event, this agreement should be construed most strongly against the plaintiff which can lose nothing by having the deficiency first determined, and in favor of the defendant whose rights as a member should not be confused with his obligations as a borrower. The agreement between the association and the defendant shareholders should be construed to mean that the shares of stock or interest of the members in the association should be applied only when and if a deficiency has been established upon mortgage foreclosure and sale.

Submit order accordingly.