(54 App. Div. 559.)

## MUTUAL BENEFIT LOAN & BUILDING CO. v. LYNCH et al.

(Supreme Court, Appellate Division, Second Department.   November 23, 1900.)

1. BUILDING AND LOAN ASSOCIATIONS—PAYMENTS—PREMIUMS—FINES — USURY.
   Under Laws 1892, c. 689, authorizing the incorporation of building and mutual loan associations, and section 173, providing the imposition of fines for nonpayment of dues, or the making of any monthly payment or premium on loans to members required by the certificate of incorporation, shall not be deemed a violation of usury statutes, a building and loan association has authority to fix the amount of such fines, dues, and premiums, and hence payment of the amount fixed cannot be regarded as usury.

2. SAME—PREPAYMENT OF DUES—ULTRA VIRES.
   Where the rule of a building and loan association requires the payment of six months' dues in advance in order to entitle a member to secure a loan, a borrower who has become a member, and made such payment in order to secure the loan, is estopped to claim that the rule was ultra vires, and hence cannot claim that such payment rendered the loan usurious. .

3. SAME—MORTGAGE—DATE—INTEREST.
   Where a loan was made on May 20th, but was dated May 15th, and the interest on another debt, which the lender assumed to pay, was not retained after May 15th, the payment of interest on the loan for the five days did not render the loan usurious, so as to make the mortgage given to secure it void.

4. SAME.
   Defendant, in order to pay an indebtedness of $2,500 on a first mortgage, and a small second mortgage, and taxes, became a member of a building and loan association, subscribing for shares which, when matured, would amount to $3,000, and executing a bond and mortgage for that amount. The mortgage was made subject to the first mortgage of $2,500, which the association assumed and agreed to pay, so that it only paid out on the loan the sum of $500. *Held*, that such a loan was proper, and hence the requirement of the borrower to pay the dues and premiums on shares amounting to $2,500 was not usurious, and the mortgage was not void.

Appeal from special term, Kings county.

Action by the Mutual Benefit Loan & Building Company against Mary E. Lynch and others to foreclose a mortgage. From a judgment dismissing the action and canceling the bond and mortgage (63 N. Y. Supp. 835), plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

William J. Wyckoff, for appellant.
George W. McKenzie, for respondents.

GOODRICH, P. J.   The plaintiff is the holder of a bond and mortgage of $500, executed by the defendant Mrs. Lynch upon a house and lot in Brooklyn.   This action is brought to foreclose the mortgage, and the answer states that the bond and mortgage are void for usury.   The court dismissed the complaint on that ground, and the plaintiff appeals.   The plaintiff was incorporated in 1893, under article 5 of the banking law (chapter 689, Laws 1892).   There have been amendments of this article, but they do not affect the present controversy.   Article 5 provides for the incorporation of building and mutual loan associations by a certificate to be approved by the superintendent of banks, and filed in the county clerk's office, and a

certified copy in the office of the superintendent of banks.   This provision was complied with, and the company became a corporation. The certificate provided for several classes of stock,—income, prepaid, and installment.   We are not concerned with any question as to the power of the company to issue any kind other than the installment stock, which was issued to Mrs. Lynch.   It may be said, however, in passing, that the court of appeals, in People v. Preston, 140 N. Y. 549, 35 N. E. 979, 24 L. R. A. 57, expressly held that such a company, under its certificate of incorporation, might issue all three kinds of stock.

The par value of each installment share was to be $200, the dues to be paid by each member to be 50 cents per month in class B shares, and a premium of not to exceed 50 cents per share monthly for priority of advance and for the liabilities assumed by the company; members not paying their dues promptly were to be subject to a fine of five cents per month on each dollar of arrears, and, in case of a shareholder falling in arrears for six months, the directors might declare the shares forfeited, together with all previous payments and profits thereon.   Section 173 of the act provides:

"Nor shall the imposition of fines for nonpayment of dues or other violation of the certificate of incorporation, nor the making of any monthly payment required by the certificate of incorporation, or of any premiums for loans made to members be deemed a violation of the provisions of any statute against usury."

The section exempts from usury—First, imposition of fines for nonpayment of dues or fees or other violation of the certificate of incorporation; second, making monthly payments required by the certificate of incorporation; third, premiums for loans made to members.

The question to be decided is whether the agreement made and the transactions occurring at the time of the execution of the mortgage fall within one of these classes.   If they do, there is no usury.   The facts are not seriously in dispute.   Mrs. Lynch was the owner of a house and lot mortgaged for $2,500 to Mrs. Schroeder, the interest upon which was past due.   There was also a small second mortgage on the property and some arrears of taxes.   Mrs. Lynch applied to Duckworth, a broker, for a loan of $3,000 to pay off the mortgages and taxes.   Duckworth arranged a loan with the plaintiff, and Mrs. Lynch went to the company's office on May 20, 1897, to close the transaction.   There is some evidence tending to show that Mrs. Lynch was not fully aware of what the transaction was, or of the full meaning of the papers which she executed, but, in the view we take of the matter, it is not necessary to take that subject into special consideration.

Mrs. Lynch signed a written application for a loan of $3,000 and for membership, subscribing for 15 shares of class B stock of the company.   In this application she agreed to pay the sum of $7.50 each month during the continuance of membership, and to abide by all the terms and conditions contained in the articles of association and incorporation.   One of the conditions was that each borrowing shareholder should pay a monthly premium of not less than 50 cents on each share until the loan was canceled, and that for failure to

pay the monthly dues of one dollar per share, or interest or premium, the member should be fined 5 per cent. per month on each dollar in arrears, and that each borrowing shareholder should pay 6 per cent. interest on his loan. The ultimate value of each share was to be $200, and, when the dividends and payments on each share equaled that sum, the shares should be matured, and the shareholder entitled to withdraw $200 for each share held by her. Mrs. Lynch also executed a bond and mortgage for $3,000, dated May 20th. The bond was conditioned upon the payment by her of $30 in advance on June 15th,—that is, $2 upon each share,—and a like amount on the 15th of each month, till the 15 shares should be worth $200 per share, and compliance with the conditions indorsed upon the certificate and the rules and by-laws of the company. The mortgage provided that it was subject to the Schroeder mortgage, which the plaintiff assumed and agreed to pay at maturity, and that such assumption should be void upon default in the performance of the conditions of the bond. Class B stock is installment stock, the par value being stated at $200. Any holder of such stock for a period of six months could become a borrower of a sum equal to the par value of his stock. There was a rule of the company that the payment of six months' dues in advance was the equivalent of a holding for six months. A memorandum in evidence shows the method of closing the transaction:

Certificate No. 2,425.    Class B.    15 Shares.

| | | |
|---|---|---|
| Total amount of loan $3,000.00.    Amount 1st mortgage | | $2,500 00 |
|           "          2d          " | | 500 00 |
| 6 months' dues, at $7.50 per month | $ 45 00 | |
| 1 month's dues, interest premium (7th payment) | 30 00 | |
| Drawing bond and mortgage | 10 00 | |
| Accrued interest on 1st mortgage from Jany. 26, '97, to May 15, '97 | 46 25 | |
| Satisfaction 2d mtg | 190 18 | |
| Recording Duckworth mtg | 1 50 | |
|    "          satisfaction | 1 00 | |
| Attorney's fee, search, and disbursements | 30 00 | |
| Recording mortgage | 2 50 | |
| | $78 20 ⎫ | |
| Taxes | 53 24 ⎬ | 147 94 |
| | 16 50 ⎭ | |
| | | $504 37 |

Mrs. Lynch was thus shown to be indebted to the company for the balance of $4.37. There is no question that under section 173 the company was justified in fixing the amount of dues and premiums named in this memorandum. There is some question whether it had the right, under its rules, to require the payment of the six-months dues to qualify Mrs. Lynch as the holder of a certificate of stock for that period, but we cannot hold this act ultra vires, as that was her agreement, and she accepted the benefit of the transaction. The charging of the other items in the account to Mrs. Lynch seems to have been acquiesced in by her, and we cannot decide that they were improper.

The question, however, is whether the transaction, while fair upon its face, was in fact a cover for usury. We cannot discover any such intent. It may be that Mrs. Lynch has made an improvident contract authorized by the statute. We had occasion in Loan Co. v. Samuels, 43 App. Div. 386, 60 N. Y. Supp. 91, to consider the general subject here involved. The remarks of Mr. Justice Cullen in that case are equally applicable to the case at bar. He said that the burden of the argument of counsel for the mortgagor was to show the unfairness of the conditions of the loan, the extravagant rate of interest which the borrower agreed to pay, and the illusory character of the expectations held out to him, but said that this was simply an argument against the economic character of such associations. The legislature has authorized the incorporation of such associations, and given them authority to make such contracts as that which was made by the plaintiff and Mrs. Lynch, and the courts have repeatedly approved them. People v. Preston, 140 N. Y. 549, 35 N. E. 979, 24 L. R. A. 57.

In Association v. Read, 93 N. Y. 474, the court decreed the validity of a bond and mortgage similar to the one here under foreclosure, and held that although Meier, the mortgagee, did not receive the entire amount named in the mortgage, the company retaining the amount of the premiums, this did not render the loan usurious, and that it was lawful for the company to provide that default in the payment of dues, fines, and penalties would mature the mortgage. It said (page 480):

"This is not a case where a larger sum is made payable in consequence of the nonpayment of a smaller sum, and payment of a larger sum is not imposed as a penalty. But this is a case where the whole of a specified sum becomes due because the partial payments are not made as stipulated, and the principles of law which authorize courts of equity sometimes to relieve from forfeitures do not apply to such a case as this."

The respondent contends that as the mortgage was dated May 20th, and interest was calculated from May 15th, the agreement was tainted with usury. The amount of such interest is trifling, and, in our view of the agreement between the parties, we should not be swift to seize such fact to defeat the mortgage. There is no evidence that this was a plan to exact usury, or that there was any intention to demand or pay illegal interest, and the maxim, "De minimis non curat lex," would seem applicable. Indeed, this would be offset and explained by the fact that the company retained the interest in the Schroeder mortgage only up to May 15th, which was one of the semimonthly days on which the transactions of the company were calculated. It is well settled that the intention to take usury must have been the full contemplation of the parties, not of one party, but of both parties, to the transaction. In Condit v. Baldwin, 21 N. Y. 219, 221, it was held that "it is the essence of a usurious transaction that there shall be an unlawful and corrupt intent on the part of the lender to take illegal interest, and so we must find before we can pronounce the transaction to be usurious," and that to constitute usury it must be shown that the additional interest is paid or retained in pursuance of a mutual agreement between

the parties. Guggenheimer v. Geiszler, 61 N. Y. 293; Morton v. Thurber, 85 N. Y. 556. There is no evidence of any such plan or agreement. The moneys were charged against Mrs. Lynch in pursuance of her agreement, and there is no evidence which justified a finding that the plan was intended to cover the exaction of usury. The bargain may have been a hard one, but the evidence is not sufficient to show that Mrs. Lynch did not understand the agreement. On the contrary, the evidence impresses us with the conviction that she understood the terms of the contract, and continued to observe it, and pay her dues, until sickness and misfortune prevented further payment by her. But this may not interfere with the course of the law. We think the judgment should be reversed.

Judgment reversed, and new trial granted, costs to abide the final award of costs. All concur.