(40 Misc. Rep. 339.)

### ROBERTS v. MURRAY et al.

(Niagara County Court. March, 1903.)

1. LOAN ASSOCIATION—USURY.
    Where a savings and loan association incorporated under Laws 1851, c. 122, compels a borrowing member to pay not only interest on the loan, but premiums thereon, the transaction is not usurious.

2. SAME—INSOLVENCY—RIGHTS OF BORROWING MEMBERS.
    Where a loan association becomes insolvent, and a mortgage given by a member for money borrowed is foreclosed by the receiver, the member is chargeable with the loan and interest, but not with premiums agreed to be paid, and the premiums already paid should be credited on the lien.

3. SAME.
    On foreclosure of a mortgage by receiver of insolvent loan association, dues on stock paid should neither be charged to the member, nor set off in his favor against the loan.

4. SAME.
    On insolvency of a loan association money paid as dues by a member must await the final distribution by the receiver, and cannot be credited on a loan to a member.

¶ 4. See Building and Loan Associations, vol. 8, Cent. Dig. §§ 63, 66.

Action by James A. Roberts, receiver of the Metropolitan Savings & Loan Association of Buffalo, against Mary A. Murray and others. Judgment for plaintiff.

Clark H. Timmerman, for plaintiff.

King, Leggett & Brown, for defendants Murray.

HICKEY, J.   In December, 1898, the defendant Mary A. Murray became a member of the Metropolitan Savings & Loan Association, now in the hands of plaintiff as receiver.   As such member, there were issued to her 62 shares of class "A" stock.   Under the by-laws of the association, she was required to pay dues on this stock amounting to $15.50 a month.   Upon becoming a member, she immediately made application to the association for a loan of $5,400.   This application was granted.   At the suggestion of some of the officers of the association, $4,240 of the amount asked for was obtained by the defendant Mary A. Murray from the Niagara County Savings Bank, to secure which she gave her bond and a mortgage upon the real estate described in the complaint in this action.   The balance of the $5,400 loan applied for, being the sum of $1,160, was advanced to her by the association, and she thereupon executed and delivered to the association her bond and a mortgage upon the same property covered by the bank mortgage as security for the full amount of the loan.   This mortgage was made a junior lien to the bank mortgage.   The defendant Sheldon T. Murray is the husband of the defendant Mary A. Murray, and joined with her in the bond and mortgage last above described.   By this bond and mortgage the loan association assumed, in a limited or conditional way, the payment of the bank mortgage; and it appears that the interest on the bank mortgage has been paid by the association and receiver down to July 1, 1902, amounting to $890.40.   The bond and mortgage given to the association, among other things, provided for the payment by defendants of interest at the rate of 6 per cent. on the full amount of the loan, namely, on $5,400, and for the payment of premiums amounting to $13.50 a month; both interest and premiums to be paid monthly, and to continue until a sufficient sum should be to the credit of defendants in dues paid and apportioned profits to fully pay said principal sum, together with all fines and fees that might be lawfully charged against said shares.   The bond and mortgage also further provided that in case default be made in the payment of interest, premiums, dues, fines, or fees, and the same, or any part thereof, should remain unpaid and in arrears for three months from the time the sum so in default became due and payable, then the whole of said loan or advance, and all sums secured by the bond and mortgage, should, at the option of the board of directors, become due, and the association was authorized to proceed to enforce collection.

The defendants have paid to the association in cash $1,375.   Of this sum, $403. represents dues paid on stock at the rate of $15.50 a month for 26 months, and the balance, namely, $972, represents interest and premiums for 24 months on the $5,400 loan.   Mrs. Murray, it seems, was required to pay dues for 2 months preceding the date

when she became a member, which accounts for her having paid dues for 26 months, and interest and premiums for only 24 months. The monthly payment of dues, interest, and premiums amounted to $56, and the last payment was made in December, 1900. Defendants thereupon made application to the association for a discharge of their mortgage, claiming that their understanding of its provisions entitled them to such discharge. The association refused to give such discharge, and its officers thereupon explained to defendants the nature of their contract and the extent of their liability. The defendants thereupon accused the association of fraud, and of having, through its officers and agents, induced the defendant Mary A. Murray to become a member and to procure the loan in question by means of false representations. It appears that the defendant Sheldon T. Murray called at the offices of the association several times thereafter, and had interviews with its officers respecting the transaction. And it further appears that defendants finally gave their promissory note to the association for $392 to cover seven defaulted payments of dues, interest, and premium. This note was not put in evidence, and the proof does not show clearly just when it was given or when it became due, but there is enough in the evidence to warrant a finding that the note became due about September 1, 1901. It was not paid, and it does not appear that any proceedings were ever taken to enforce its collection. Defendants paid no dues, interest, or premiums after the December payment of 1900 as stated above, but did give their note for seven of such payments, as we have just seen. On or about April 26, 1902, plaintiff was appointed receiver of the association. He brings this action to foreclose the mortgage executed to the association as described above, and claims that there is due and owing to the association from the defendants about $1,900. This sum is arrived at by charging defendants with $1,160 advanced to Mrs. Murray by the association, and with interest thereon down to the entry of judgment; also with the $890.40 paid by the association and receiver as interest on the bank mortgage, and with $540 in premiums accruing from the date of the mortgage to the appointment of the receiver, and by crediting them with $972 of the $1,375 actually paid. The defense of usury and fraud is interposed, and plaintiff's method of computing the amount due is rejected.

The transaction was not usurious. Concordia Savings & Aid Association v. Read, 93 N. Y. 474; Mutual Benefit, Loan & Building Co. v. Lynch, 54 App. Div. 559, 67 N. Y. Supp. 6. The fraud, if there was any (and I do not determine this point), was waived by defendants when they gave their note to the association for $392, with full knowledge of the real nature of the transaction into which they had entered.

The principal question remaining for determination is, with what sums shall defendants be charged in this action, and with what payments shall they be credited? Suppose the defendant Mary A. Murray, as a member of this association, holding 62 shares of its stock, had not borrowed any money from the association, and had not given her note to the association as above stated, but had paid monthly dues on her stock, as required by the by-laws, down to the time

she defaulted; what would have been her status when the institution went into the hands of the receiver? Clearly, she would have paid into the association $403 as dues on her stock, and she would have a credit on the books of the association for this item, together with her share in any profits made by the association, and against this total would be charged any fines legally imposed for defaults in monthly payments. Hence, if Mrs. Murray had not become a borrower of the association, but had simply paid dues on her stock for the same length of time that she actually did make payments of dues, interest, and premiums, she would have been, at the time the association went into the hands of the receiver, a creditor of the association to the amount of $403 paid as dues on her stock, together with any profits which should be credited thereto, less any fines legally imposed and chargeable against said credits. And it follows that, upon a final distribution by the receiver of the assets of. the association, she would be entitled to receive her proper percentage, whatever that may prove to be, upon the above credits. And the extent of her loss would depend on the extent of the insolvency of the association. But Mrs. Murray was not only a member of the association, but a borrower therefrom. By becoming a borrower she did not cease to be a member. Her membership relation continued just the same as before. By becoming a borrower she simply assumed an additional liability. As a member she obligated herself to pay the association $15.50 a month dues on her stock. As a borrower she obligated herself to pay the further sum of $40.50 a month interest and premiums on her loan. Now, it would seem reasonably plain that her relation to the association as a member and her relation to it as a borrower must be regarded as distinct. As a .member she must stand with the other members, who borrowed nothing from the association, and must lose the same percentage on what she paid in as dues on her stock as they must lose. The fact that she became a borrower from the association should not give her an advantage over the other members who borrowed nothing, and she cannot now be heard to urge that what she paid in as dues must be offset against what she borrowed. To permit such an application of the funds of the association would be an outrage on the nonborrowing members. If, in the final adjustment of the association's affairs, either class should be given any advantage over the other, that advantage should go to the nonborrowing rather than to the borrowing members. And especially would this be true in a case like this, where it would seem that Mrs. Murray became a member of the association mainly for the purpose of enabling her to procure a larger loan on her real estate than she could obtain from other institutions or individuals engaged in the business of loaning money. But neither class is entitled to any advantage over the other. Each must fare the same. And it follows that Mrs. Murray is not entitled to have the $403 which she paid in as dues offset against what she borrowed. That sum must remain in the hands of the receiver to the credit of Mrs. Murray, and upon the final distribution of the assets of the association by the receiver she will be entitled to receive the same dividend thereon as if she had never become a borrower.

Now as to her status as a borrower: The association, having become insolvent, is powerless to carry out its part of the contract, and the defendants are therefore absolved from a strict performance on their part. Under these circumstances, substantial justice cannot better be done than by placing the parties on the plane of the ordinary borrower and lender of money. Defendants received in cash from the insolvent association $1,160. They agreed to pay the association, as a condition of this loan, interest thereon at the legal rate; also interest at the legal rate on the $4,240 loaned them by the Niagara County Savings Bank; the association to take care of the interest on this bank mortgage. They also agreed to pay premiums amounting to $13.50 per month. These premiums, computed down to the time when the receiver was appointed, amount to $540. Plaintiff now claims to be entitled to recover these several items, consisting of principal, interest, and premiums, amounting approximately to $2,872 (depending on the time to which interest is computed), less the $972 which defendants have paid as interest and premiums. That defendants are chargeable with the $1,160 advanced to them by the association, and with interest thereon from the date of the loan, and with $890.40 paid by the association and receiver as interest on the bank mortgage, seems perfectly plain. But I am unable to find any just or equitable principle upon which they can be charged with the $540 in premiums. No reason seems to be advanced why they should be so charged, except that they agreed to pay it. This falls far short of a satisfactory reason, under the circumstances existing in this case. There is no justice or equity back of such reason. What does this $540 represent in value received by the defendants that they should be charged with it? Absolutely nothing. They received $1,160 from the association, but they are being charged with that and with legal interest thereon. The association and receiver have paid $890 as interest on the bank mortgage, but the defendants are also charged with that. Furthermore, the $403 which Mrs. Murray paid to the association as dues on her stock must, as we have seen, remain in the receiver's hands, and she must accept such dividend thereon as the courts may eventually declare. Why, then, should defendants be charged further with this $540 in premiums? Can any reason be found for it other than the one stated, namely, that they agreed to pay it? I find none, and that reason, whatever potency it may have had at one time, is without any force now, because the association cannot, by reason of insolvency, perform its part of the contract. If there was ever any consideration for this promise on the part of defendants to pay premiums, it consisted in the promises and representations of the association, through its officers and literature, that the investment would be a profitable one to defendants financially; and, now that the association is powerless to make good its promises and representations, the consideration has entirely failed, and defendants cannot be held·strictly to their agreement.

This agreement, in so far as defendants obligated themselves to pay these premiums, would seem to be unconscionable, and, as between individuals, or any other sort of a corporation, would have been

usurious; and now that the association has become insolvent, and cannot perform its part of such contract, those having its affairs in hand must be satisfied with such a recovery as will reimburse the association for all it has loaned or paid out for the benefit of defendants, with legal interest thereon. Such a recovery is manifestly equitable. It neither wrongs nor does injustice to either party to this controversy. But to charge defendants with this $540 in premiums, which represents nothing that the association has parted with for their benefit or otherwise, and which represents nothing of value received by them, would be anything but equitable, and cannot be sanctioned by a court of equity.

The note which defendants gave for $392 to cover seven defaulted payments represents $283.50 of interest and premiums on the loan and $108.50 dues on stock. In respect to the defaulted payments of interest, it has already been pointed out that defendants should be, and are, charged therewith in this action. And in respect to the defaulted premiums it has been shown that defendants should not be charged therewith. Hence the note, so far as it represents premiums and interest, namely, to the amount of $283.50, with interest on that sum from the date of the note, should be canceled in the hands of the receiver. So far as it represents defaulted dues on stock, it is for the receiver to determine whether he will seek to enforce it by a separate action or not. If collected, it would, for reasons already stated, have to be placed to the credit of defendant Mary A. Murray, as hereinbefore pointed out, respecting all other dues on stock paid by her. Defendants are only entitled to be credited in this action with the $972 paid by them as interest and premiums on the loan. They cannot be credited in this action with the $403 paid as dues on stock, for the reasons hereinbefore pointed out.

No steps appear to have been taken by the association looking to a forfeiture of the stock issued to the defendant Mary A. Murray, although the by-laws of the association seem to provide for such a proceeding. Her stock should not, therefore, be declared forfeited, as demanded by the receiver, but must remain in her name, to the end that she may receive any dividend thereon that may hereafter be declared.

This reasoning leads to the conclusion that defendants are chargeable in this action as follows: With amount advanced to them by the association, $1,160; with interest thereon at 6 per cent. from the date of loan to entry of judgment, to be computed; with interest paid by the association and receiver on the underlying mortgage, $890.40; and that they should be credited with the $972 paid by them as interest and premiums on the loan; and that plaintiff is entitled to judgment of foreclosure and sale for the difference. Plaintiff should be allowed his disbursements in this action, incurred and to be incurred, but no costs.

Judgment accordingly.