(94 App. Div. 171.)

### ROBERTS v. CRONK.

(Supreme Court, Appellate Division, Fourth Department. May 17, 1904.)

1. BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—SETTLEMENT.

　　A borrowing member of a building and loan association is not entitled to have payments of premium, fees, and dues credited as payments on his loan, in determining the amount due on his mortgage to the association after it had been placed in the hands of a receiver for dissolution.

　　Spring, J., dissenting.

Appeal from Special Term, Erie County.

Action by James A. Roberts, as receiver of the Metropolitan Mutual Savings & Loan Association of Buffalo, N. Y., against Adelbert D. Cronk. From a judgment for plaintiff, defendant appeals. Affirmed.

The action was commenced on the 17th day of September, 1902, to foreclose a mortgage for $1,000, given by the defendant to the Metropolitan Mutual Savings & Loan Association of Buffalo, N. Y., of which the plaintiff is receiver.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

I. W. Cole, for appellant.

Clark H. Timmerman, for respondent.

McLENNAN, P. J. The facts in this case are not in dispute. The Metropolitan Mutual Savings & Loan Association is a domestic corporation, and was organized under and pursuant to chapter 122, p. 234, of the Laws of 1851, and the several acts amendatory thereof and supplemental thereto. On the 11th day of July, 1898, the defendant, Adelbert D. Cronk, who was the owner of the premises described in the complaint, subject to a mortgage of $3,000, became a member of the asso-

¶ 1. See Building and Loan Associations, vol. 8, Cent. Dig. §§ 63, 66.

ciation by subscribing for 40 shares of its stock, known as "Class A," of the par value of $4,000, and on the same day applied to it for a loan of $4,000, and thereby agreed to be governed by and to comply with "the conditions and provisions of the articles of association." He stated that he wished to borrow on the mortgaged property, and agreed "to assign and pledge, as security for this loan, 40 shares in Class A, and to promptly pay regular dues or monthly installments thereon, and also bid and agree to pay a premium of 25c. per month on each share so assigned and pledged, together with interest payable monthly at the rate of (6) six per centum per annum on the amount loaned, until the full amount of said loan be paid. The application for the loan was granted. The 40 shares of stock were transferred to the association "as security for the due and timely performance of all and every of the terms, conditions, covenants, and agreements herein, and in said bond and mortgage so executed to said association, contained incumbent upon him to perform." On the same day Cronk executed and delivered to the association the bond and mortgage in suit, conditioned for the payment of $4,000. The bond, among other things, provided:

"Whereas the said obligor Adelbert D. Cronk is a member of said association, as defined in its articles of association, the provisions of which shall be deemed a part of this instrument as fully and completely as though set forth at length herein, and the owner and holder of forty (40) shares of Class 'A' stock * * * of the par or face value of four thousand ($4,000) dollars, the monthly dues upon which amount to ten ($10) dollars, and upon the security thereof and a proposed bond secured by a mortgage upon real property, * * * heretofore applied to said association for a loan or advance, and, in accord with and pursuant to said articles agreeing to pay interest monthly at and after the rate of six per centum per annum * * * and a premium of twenty-five cents per share per month on the stock so assigned, payable monthly at the same time and place as the regular dues on said stock."

The bond further provided that the appellant—

"Shall well and truly pay, or cause to be paid, unto said association, at its principal office aforesaid, on the third business day of each month, the said monthly dues upon said shares and the interest and premium aforesaid for one month, calculated at the rates aforesaid upon the sum of four thousand ($4,000) dollars, together with all fees and fines lawfully charged against said shares or against dues credited thereto under said articles; * * * until the maturity of said shares and a sufficient sum is to the credit thereof in dues paid and apportioned profits to fully pay said principal sum, together with all fines and fees that are or may be lawfully under said articles charged to or against said shares."

Also:

"It is further agreed that should default be made in the payment of said interest, premium, dues, fines or fees, * * * and the same or either or any of them or any part thereof remain unpaid and in arrears for three months, * * * the whole of said loan or advance and all sums secured by this bond said mortgage and assignment of said shares, shall at the option of the board of directors of said association become due, and it may proceed to enforce collection upon the securities held by the association."

By the agreements and instruments referred to, the defendant, Cronk, in express terms obligated himself to pay to the association $40 each month, $20 thereof as interest on the $4,000 loan, $10 as premium, and $10 fees and dues. The association, in consideration of the undertaking and agreements upon the part of the defendant, agreed that it would pay the interest upon the prior mortgage of $3,000 as the same became

due, and that if the defendant, according to the terms upon which his stock was issued to him, should pay such premiums, etc., which, with the earnings of the stock, would amount to the face value thereof, until such payments and accretions should be sufficient to mature such stock, it would thereupon cancel and discharge the indebtedness represented by the said bond and mortgage. As a matter of fact the defendant, Cronk, received only $1,000 from the association. The balance of the loan, to wit, $3,000, was retained by it as against the prior mortgage of that amount, and out of the payments made by Cronk the association paid the interest on such mortgage. The parties continued under the agreement until October 1, 1901, the defendant paying $40 each month as provided by it, and in the meantime paid, in accordance with the by-laws and rules of the association, $390 by way of dues, and a like sum as premiums. He had also paid the interest upon such loan at the rate of $20 per month, amounting to $780. At that time the defendant ceased to make payments, and on the 1st day of May, following, the plaintiff was duly appointed receiver of the association, and this action was brought by him for the foreclosure of the mortgage given by the defendant. The only issue presented by this appeal is as to the amount due and owing upon such mortgage. The learned county court charged the defendant with the $1,000, concededly advanced to him by the association; with the interest which became due and payable on the mortgage from October 1, 1901, until May 1, 1902, $140; with the monthly premium which the defendant agreed to pay for the use of the money loaned to him, to wit, $70, which amounted to $1,210; and deducted therefrom the sum of $139.50, which the association failed to pay as interest upon the $3,000 mortgage—leaving, as found by the trial court, $1,070.50 due and owing upon such mortgage. The defendant insists that he should be credited with the amount of dues paid by him to the association, and also with the amount of the premium which he paid for such loan, amounting in the aggregate to $780.

In our opinion none of the payments of either of those classes should be credited upon the loan. The dues were paid by the member (defendant) for the purpose of maturing the stock issued to him, and the premiums were paid as an additional compensation, or bonus, for the loan, and also became an asset of the association and enhanced the value of the stock issued by it. The defendant cannot now be credited upon his loan with the amount paid by him as dues or premiums. When the affairs of the association are finally wound up he will, of course, have credit for all of the payments so made by him, the amount to be then credited being dependent upon the amount of its net assets. Such distribution cannot be made in this action, because no suggestion is contained in the answer that such relief can or should be granted, and there is no proof to indicate what amount, if any, the defendant will be entitled to receive. Riggs v. Carter, 77 App. Div. 580, 79 N. Y. Supp. 177; affirmed 173 N. Y. 632, 66 N. E. 1115.

The judgment appealed from does, however, contain the following provision, which affords full protection to the appellant:

"And it is further ordered and adjudged that if at any time the plaintiff herein shall receive a dividend on said above mentioned stock [being the forty shares assigned to the association by the defendant] he shall credit the amount thereof on the judgment herein."

This action is for the foreclosure of the obligation of the appellant to the association, as a borrower; one, perhaps, of many others which the receiver must necessarily institute in order to gather in the assets of the association for the purpose of eventually distributing the same equitably as we have suggested. The premium for the loan which the defendant bid and afterwards paid monthly to the association cannot now be credited against the principal of the loan. It was a payment in excess of the legal rate of interest, and it was paid each month, with the interest, as an extra return for the use of the money loaned to the defendant. The nature of the payment or exaction is aptly characterized in the language of Justice Williams in Hall v. Stowell, 75 App. Div. 21, 22, 77 N. Y. Supp. 953:

"It was an exorbitant compensation agreed to be paid for the use of the money, considering all the payments to be made by the defendant, but the Legislature has legalized such agreements, and if parties will enter into them they must take the consequences."

The premium in that case which was thus characterized differed from the one in this only in that it was paid in a gross sum by being added to the amount of principal actually loaned, while here it was paid in smaller monthly installments.

We cannot express our view of the law defining the rights of the parties, in the circumstances in which they are now placed, better than to reiterate the words of Justice Williams in the case of Hall v. Stowell, supra:

"When the corporation making the loan goes into the hands of a receiver, and it is no longer able to carry out the agreement, the borrower is relieved also from compliance with the terms thereof, and an equitable adjustment between the parties must be made. In such cases the better rule seems to be that the borrower be charged with the money received from the corporation, and the legal rate of interest thereon, and be credited with such payments as are referable to the loan itself and not to the stock. This rule is based upon the theory that the relations of a member as a shareholder and a borrower are separate and distinct; that as shareholder he should bear his proportionate share of the loss, but as borrower he should have the benefit of the rescission of the contract, and should repay what he has received, less what he has paid on account thereof"—

Citing Strohen v. Franklin Saving & Loan Ass'n, 115 Pa. 273, 8 Atl. 843; Post v. Building & Loan Ass'n, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201; Endl. Build. Ass'n (2d Ed.) §§ 514, 515, 531; Rochester Savings Bank v. Whitmore, 25 App. Div. 491, 49 N. Y. Supp. 862; Breed v. Ruoff, 54 App. Div. 142, 66 N. Y. Supp. 422; and Hannon v. Cobb, 49 App. Div. 480, 63 N. Y. Supp. 738.

We do not concur with the learned counsel for the appellant in his contention that there is in the decision of the case of Hall v. Stowell, supra, an apparent departure from the principle adopted by this court in Hannon v. Cobb, supra. Such is not the interpretation we give the decision in the later of the two cases referred to. So far as the principle which controlled the decision of the case of Roberts v. Murray, 40 Misc. 339, 81 N. Y. Supp. 1023, is in conflict with the views above expressed, as indicated by the opinion of the learned county court, it must be regarded as overruled, notwithstanding the judgment in that case was affirmed by this court. 85 N. Y. Supp. 1145.

We think the method adopted by the learned trial court to ascertain the amount due from the defendant to the plaintiff in this case was absolutely just and fair to both parties, and must be regarded as the correct rule for the determination of the rights of litigants in this class of actions. It follows that the judgment appealed from should be affirmed.

Judgment affirmed, with costs. All concur, except SPRING, J., who dissents.