PRESTON v. LAMANO et al.

(Supreme Court, Special Term, Kings County. February, 1905.)

1. BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—FORECLOSURE OF MEMBER'S MORTGAGE—CHARGES.

The contract between a building association and a borrowing member, in connection with the statute which governed it (Laws 1851, p. 234, c. 122), required the member to subscribe for stock to an amount equal at par to the sum borrowed, plus the premium to be paid for the loan. The member then gave a bond and mortgage for the total sum, and agreed to pay monthly installments of interest on the same, and to make monthly payments of dues, until the maturity of the stock. The period of payments was estimated at 21 years, but it might be less or more. Upon maturity the bond and mortgage were to be canceled, and the stock surrendered to the association. The member kept up his payments according to his contract, but the association became insolvent, and suit was brought by the receiver to foreclose the mortgage. *Held,* that the member could not be charged with the premium, nor with the difference between the same and the proportionate part thereof for the unexpired years of the estimated maturity period, at the date of the appointment of the receiver.

**2. SAME—CREDITS.**

The member could not be credited with payments made on the premium, nor with the monthly dues paid to mature the stock, nor on the principal, but such payments made by him became part of the assets of the association, his proportionate share of which the member could only get, with other stockholders, at the final liquidation and division of the net assets among creditors and stockholders.

**3. SAME—PRIOR MORTGAGES—ASSUMPTION BY ASSOCIATION.**

The association assumed a prior mortgage on the property, the amount of which was included in the loan, and paid the interest, but not the principal, thereon. *Held*, that the amount of the mortgage would be deducted from the amount due to the association by the member.

**4. SAME.**

The mortgage was at 5 per cent., while the member paid 6 per cent. on his entire loan. *Held*, that the difference in interest was part of the association's profit, and the member was not entitled to credit thereon, but would have to wait until the final liquidation to get his proportionate share of such credit.

**5. SAME.**

Any interest on the mortgage paid by the receiver would be charged to the member.

**6. SAME—ANTICIPATION OF DIVIDENDS.**

In an action by the receiver of an insolvent building and loan association to foreclose a borrowing member's mortgage, the member should, as a matter of grace, be credited with any dividend which the receiver, keeping within a safe margin, knew that the members would ultimately receive.

Suit to foreclose a mortgage by Charles M. Preston, as receiver of the New York Building-Loan Banking Company, against Antonio Lamano and another. Judgment ordered.

Charles W. Dayton, for plaintiff.
W. C. Beecher, for defendants.

GAYNOR, J. The bond and mortgage were made July 1st, 1897, for $11,140. The company having failed was put into the hands of a receiver by this court September 15th, 1903. The question is how much is due.

This cannot be determined without understanding the scheme as part of which the bond and mortgage were given. It is one that is usual with building and loan companies, and is as follows:

The defendants applied to the company for membership and for a loan of $8,800. To become members and get the loan they had to subscribe for stock of the company to an amount equal at par to the sum they were to borrow, plus the premium they should have to pay for the loan, or for their stock, whichever way you put it, for it is the same thing. In theory they bid, but in fact they were charged, a premium of 25 cents a month on each share of stock for a period of 144 months; and this they agreed to pay in their written application for membership and the loan. Instead, however, of leaving these monthly premiums to be paid monthly, they were capitalized at their then present aggregate value, as if to be paid in advance in a lump sum, viz., at $2,340. But instead of this sum being paid in advance to the company by the defendants, it was, after the usual course with building and loan companies, added

to the loan of $8,800; and thus a total of $11,140 was arrived at as the sum to be secured to be paid to the company by the defendants. The defendants therefore had to subscribe not only for 88 shares of stock of the par of $100 each for the loan of $8,800, but also for 23⅖ shares for the premium of $2,340, making 111⅖ shares in all, the par thereof equaling the said total sum of $11,140.

The defendants then gave their bond and mortgage to the company for the said sum of $11,140, agreeing therein to pay $55.70 monthly as interest on the said sum at 6 per cent. per annum, and also $5.57 as dues on the said shares of stock (viz., 5 cents a share monthly, as required in the certificate of shares), making a total monthly payment of $61.27. Such monthly payments were to continue until the maturity of the said shares of stock, which meant until such payments (all invested and compounded on the fixed basis or system of the company), less the interest on the loan, should make the said shares of stock full paid. That period was estimated at 21 years; it might be less, or it might be more, dependent upon the amount of the net accumulations of the company, or whether there should be any net accumulations; for it is plain that unless the company safely invested and saved such maturing fund, the stock could never mature, for it matured only by such maturing fund becoming equal to the aggregate of the shares of stock outstanding. The shares of stock were issued to the defendants, and immediately left with the company as collateral security for the loan and premium. Upon their maturity the bond and mortgage of the defendants had to be canceled on the shares being surrendered up to the company.

This is the whole scheme, gathered as best we may from the application for membership and the loan, the bond and mortgage, the certificate of shares, the constitution and by-laws of the company, and the statute which governed it (chapter 122, p. 234, Laws 1851).

The defendants kept the contract and made their monthly payments for 6 years and 2½ months, or from July 1st, 1897, the date of the bond and mortgage, until the company failed and went into the hands of the receiver on September 15th, 1903, for the purpose of liquidation and dissolution.

The defendants were thus prevented from carrying out the contract, and it was thus brought to an end. The payments the defendants were making to mature their shares of stock could no longer be exacted, for the stock could never mature. Being in such case called upon by the receiver to pay their bond and mortgage, the question is how much is due thereon. The decisions on this head are so inharmonious as to cause confusion, rather than give much direction or help; but only because the subject is an abstruse and occult one, and did not at once open up clearly to the bar and consequently to the bench, which has to depend so largely on an educated and studious bar.

But there is one thing that most of the decisions are agreed upon, and that is that the defendants stand in a dual relation and status towards the company, namely, as stockholders (i. e., members) and

as borrowers; and it is their status as borrowers which controls the question now being considered.

1—Can the defendants be now charged with the $2,340 premium? If the defendants had defaulted, and the company were still going, the amount due would be the whole $11,140 (which includes the premium and the loan as we have seen), less the monthly payments made on the bond and mortgage. This would be so on the theory that the said capitalized premium of $2,340 was due to the company at the outset, and put in the bond and mortgage instead of being paid, and that the defendants had defaulted in the payment of it by installments. The Concordia Ass'n v. Read, 93 N. Y. 474. This, however, must be all on the theory of the company remaining solvent to the end of the contract, and keeping the contract. How it can be placed on the mere fact that the bond and mortgage in terms require it to be paid is not plain, for they have to be interpreted and modified in the light of the constitution and by-laws of the company, and the statute which governs it, for these form part of the contract.

But instead of the defendants having defaulted, the company has defaulted in its agreement to accept payment of such premium by the monthly installments secured by the bond and mortgage and running for the maturity period. Therefore the defendants cannot be charged with the said premium of $2,340 in ascertaining the amount they now owe; nor with the difference between the same and the proportionate part thereof for the unexpired years of the maturity period (estimated at 21 years) at the day when the contract was interrupted by the appointment of the receiver.

2—And in connection with the foregoing question is the correlated question, may the defendants be credited with the payments they have made on the premium? All that the defendants have paid to the company in payment of the said premium (i. e., by the monthly payments) became part and parcel of the assets of the company as it was paid, and subject to the rights of all the creditors and stockholders of the company therein, including the defendants. It having gone into the company, and become part of the assets of the company, the defendants cannot be credited with it on the bond and mortgage now, but must await the getting of their proportionate share of it as stockholders at the final liquidation and division of the net assets among the creditors and stockholders by the receiver. The receiver cannot withdraw it and pay it to the defendants, or others in like case, or (which is the same thing) credit them with it in reduction of their debt to the company. The premium and all payments thereon must be left out of consideration entirely in fixing the amount of the indebtedness of these defendants as borrowers.

3—The monthly dues are in the same category as the premium. They were paid to mature the stock, and as the stock can now never mature, their payment cannot be enforced. But the installments paid became a part of the assets of the company, subject to the rights of the stockholders and creditors, and cannot be credited to the defendants on their indebtedness as borrowers.

4—Are the defendants entitled to any credit on the principal? No, because nothing but the interest on it has been paid. All over and above interest in the monthly payments went into the general maturing fund, in which all the stockholders have a right to share and all creditors have an interest. There is therefore no foundation for the claim that a part of the principal has been paid, proportioned to the 6 years and 2½ months the payments were made as compared with the entire estimated period of 21 years.

5—There was a mortgage on the property of $6,000, which was included in the loan of $8,800. The company assumed it, and paid the interest on it, but not the principal, as it was obligated to do in the end. As that morgatge is to be left standing, the $6,000 must now be deducted, which leaves $2,800 as the amount of principal due to the company by the defendants.

6—The said underlying $6,000 mortgage is at 5 per cent. interest, whereas the defendants by their contract paid 6 per cent. on the entire loan of $8,800. The defendants are not now entitled to be credited with the difference between 6 per cent. paid by them and 5 per cent. paid by the company on the said $6,000. The company assumed the said $6,000 mortgage. The difference of interest was part of its profit, the same as though it had paid off the mortgage and borrowed the same amount of money at 4 per cent. That increment belongs to its stockholders and creditors, and cannot be credited to the defendants. They must await their share of it with all other stockholders. The credit of a like item to the defendants in Hall v. Stowell, 75 App. Div. 21, 77 N. Y. Supp. 953, was evidently by consent or without opposition.

7—Some of the cases and text-books speak of adjustments like the present one with the borrowers of insolvent companies as an equitable matter. But it is plain that the adjustment depends on principles of law. The receiver cannot lawfully take from the stockholders and creditors what legally belongs to them, and credit it to borrowers, and call that equity. The system of established principles which we call equity is not so elastic as that.

8—It follows that the amount due by the defendants is $2,800 of principal, which is the actual sum they borrowed, together with arrears of interest thereon, taxes, etc., as in ordinary cases. If the receiver has paid any interest on the $6,000 mortgage the defendants must also be charged with that. I do not go back of the date of the receiver's appointment in the calculation, as I understand that all payments to be made by the defendants, and also all payments of interest on the $6,000 mortgage by the company, which had come due before the appointment of the receiver, had been kept up; otherwise the account must start at the beginning, but on the same basis.

9—If the liquidation of the company has proceeded so far that the receiver already knows that the stockholders are to receive a dividend, and approximately the amount thereof, he should as matter of grace credit the defendants with theirs now, keeping within a safe margin, however, and the court so directs him.

I have examined all of the decisions, but it would serve no pur-

pose, unless to give work to the printer, and swell the number of the volumes of reports with which we are all being afflicted, to cite them here. The foregoing conclusions find warrant in Breed v. Ruoff, 54 App. Div. 142, 66 N. Y. Supp. 422, and are upheld by the still later authority of Riggs v. Carter, 77 App. Div. 580, 79 N. Y. Supp. 177, affirmed 173 N. Y. 632, 66 N. E. 1115, and of Roberts v. Cronk, 94 App. Div. 171, 88 N. Y. Supp. 103. In this latter case the monthly premium on the shares of stock continued to be paid monthly, instead of being capitalized in a gross sum, and included in the principal of the bond and mortgage as here. But that made no difference in principle, as must be readily perceived. It was decided that the borrower could not be credited on his loan with the monthly premiums he had paid up to the day of the company's insolvency. Here, on the same principle, the payments made on the capitalized premium sum cannot be credited to the defendants. They have gone into the company's treasury for its stockholders and creditors in lieu of the premium of 25 cents a month on each share of stock, which was agreed to be paid in the application for membership and the loan.

Let findings and judgment be prepared accordingly.