(109 App. Div. 781)

PRESTON v. REINHART et al.

(Supreme Court, Appellate Division, Second Department. December 29, 1905.)

1. BUILDING AND LOAN ASSOCIATIONS—NATURE OF CORPORATION.

A building association, organized under Laws 1851, p. 234, c. 122, as amended, for the purpose of aiding its members in acquiring real estate, making improvements thereon, and the accumulation of a fund to be returned to its members who do not obtain advances on their shares when the

funds to the credit of the share shall amount to $100, the par value thereof, is not a stock corporation as defined by General Corporation Law, Laws 1892, p. 1801, c. 687, § 3, subd. 2, defining a stock corporation as one having stock divided into shares, but is a membership corporation in which the corporation entity discharges its duties by acting as trustee for funds contributed by the members to mature the shares and seeing that the moneys contributed by the members under their mutual agreements are properly used in maturing the shares, and the demands of equity can only be satisfied by holding each member to his contract, not so much with the corporation as with the individual members.

2. SAME—INSOLVENCY—LIABILITY OF BORROWING MEMBER.

A building association organized under Laws 1851, p. 234, c. 122, as amended, entered into a contract with a borrowing member, by which the member subscribed for stock to an amount equal at par to the sum borrowed, plus the premium to be paid for the loan, and agreed to pay monthly installments of interest and dues until the shares should mature. The association purchased premises for the member, transferred the property to him, taking a bond and mortgage to secure the agreement. The member carried out his contract up to September 1st, when he neglected to make the payments then due. On September 13th the corporation passed into the hands of a receiver. *Held*, that the member must settle, according to the letter of the contract as of the date of the receivership.

3. SAME—CREDITS.

The member could not be treated as a debtor for the amount advanced by the association, crediting him with all that had been paid in as premium, interest, etc., in excess of the legal rate of interest on the advancement.

4. SAME—ASSUMPTION BY ASSOCIATION OF PRIOR MORTGAGE—CREDIT FOR EXCESS OF INTEREST PAID ON AMOUNT THEREOF.

A building association purchasing property for a borrowing member assumed a mortgage thereon. The mortgage drew 5 per cent. interest. The member paid 6 per cent. interest on the entire loan made to him, which included the amount of the mortgage. *Held*, that the member was not entitled to any credit by reason of the excess of interest paid on the amount of the mortgage.

Appeal from Special Term, Kings County.

Action by Charles M. Preston, as receiver of the New York Building Loan Banking Company, against Charles G. Reinhart and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

William H. Hamilton, for appellants.

Charles W. Dayton (Joseph R. Bullen, on the brief), for respondent.

WOODWARD, J. This case involves the same principles as those in the case of Preston v. Rockey, 96 N. Y. Supp. 857, argued at the same term, as well as the case of Preston v. Willich, 96 N. Y. Supp. 857, submitted at the October term. It has undergone exhaustive examination and presentation on the part of learned counsel, but without establishing to our satisfaction that the decisions as made upon the opinion of Gaynor, J., in Preston v. Lamano, 46 Misc. Rep. 304, 93 N. Y. Supp. 210, adopted in the Willich Case, are wrong. There is no dispute as to the facts. The questions presented relate to the liability of the defendants under their bond and mortgage to the plaintiff as receiver of the New York Building Loan Banking Company. The learned court below has held that the defendants were liable under their bond

and mortgage for all that was due according to the terms of these instruments up to the date of the receivership, being relieved of further obligations after that time, while the defendants contend that, as the company failed to complete its contract, they are to be treated merely as borrowers, and are to be credited with all that they may have paid as interest and premiums over and above the amount actually advanced by the corporation. While the facts differ in amount, and slightly as to details, the questions of law are not different in any of these cases, and we will consider the facts in the Reinhart Case.

The New York Building Loan Banking Company was organized in 1890, under the provisions of chapter 122, p. 234, of the Laws of 1851, as amended, and did business at No. 111 Fifth avenue in the borough of Manhattan, with a branch office in Brooklyn. In January, 1903, proceedings were instituted by the Attorney General for the dissolution of the corporation for insolvency, resulting in the appointment of the plaintiff as permanent receiver on or about the 24th day of February, 1904. The objects for which the corporation was formed, as set forth in its articles of association, were, among other things:

"The accumulation of a fund for the purchase of real estate, the erection of buildings, making any other improvements on lands and paying off incumbrances thereon, or to aid its members in acquiring real estate, making improvements thereon, and removing incumbrances therefrom; and the accumulation of a fund to be returned to its members who do not obtain advances on their shares, when the funds of the corporation to the credit such share shall amount to $100 a share, which is the full or par value of a share, and for the transaction of the general business of a building, mutual loan, and accumulating fund association." Article 2.

It is provided that any person subscribing for or in any way becoming the owner of one or more shares of the capital stock of this corporation shall become a member thereof, and as such shall become entitled to all the benefits and privileges and subject to all the liabilities and duties of membership. Article 3.

It seems clear that the New York Building Loan Banking Company is not a stock corporation in the proper use of that term, but is a membership corporation (see section 3, subd. 2, General Corporation Law [Laws 1892, p. 1801, c. 687]), in which the corporate entity discharges its duties by acting as trustee for funds contributed by its members to mature or bring to par the so-called shares of stock. When any share of stock of a particular class has reached the value of $100, the membership based upon such share comes to an end by the corporation paying over the $100 to the subscriber, or by transferring the property which has been purchased through the advances made by the corporation. There is no authority for continuing the investment and increasing the value of the share. There is no authority for declaring dividends out of the surplus profits. All that the corporation has to do with the transaction is to husband the funds and accumulate the contributions, whether in the form of interest, premiums, forfeitures, or fines, and to pay them over whenever the shares have become of the value of $100, so that in dealing with the equities in these cases, in an action for the foreclosure of the mortgage given by the defendants, we are not to consider the corporation as a business corporation, in the sense that it is entitled to the privileges of a stock corporation, like those of a bank

or trust company. The corporation, as a corporation, has, in theory at least, no interest in the funds in its control. It is created purely for the purpose of transacting the business of a large group of people, and enabling them, through mutual contributions, to accomplish results which in their individual capacities they would be unable to accomplish. On the one hand, the corporation says to the man who wants a home that, if he will give a certain premium for the privilege, the corporation will advance the money necessary to place him in possession of the home, will give him the present utility value of his investment, and will enable him, through a series of small payments, to mature the stock, which will pay the obligation, including the premium; while to the man who is seeking an investment it says that it will undertake to collect all premiums, interest, fines, etc., placing them in a common fund, for the purpose of bringing the value of his shares up to $100 at the earliest possible moment, and this is the inducement for the nonborrowing member to contribute his money to be presently used by the borrowing member. The latter, while in fact a borrower, is at the same time an investor. He is contributing his money, whether in dues upon his shares, in premiums or interest, to the maturing of his shares and the payment of his indebtedness, and he is doing this upon the implied promise of each member that he will live up to the requirements of his contract. The corporation is not there for the purpose of earning dividends upon shares of stock, but for the purpose of seeing that the moneys contributed by the members, under the terms of their mutual agreements, are properly used in maturing the shares; and if the questions presented upon this appeal are considered from this standpoint, it is plain that the demands of equity can be satisfied only by holding each member to his contract, not so much with the corporation as with the individual members. The funds have all been contributed by the members directly or indirectly, the corporation has no equities in the funds in its control, and the obligation of each member to every other member demands that there should be a carrying out of the contract up to the time that the corporation ceased to do business. All the cases agreed that the affairs of the corporation must be adjusted as of the date of the receivership (Roberts v. Cronk, 94 App. Div. 171, 175, 88 N. Y. Supp. 103, and authority cited); and to say that the defendants may absolve themselves from the obligations of membership, and treat themselves as mere borrowers, to be credited with all premiums, etc., in excess of the legal rate of interest upon the advances made by the corporation, is for the court to invade the rights of nonborrowing members and to make for the defendants a better contract than they contemplated when they entered into the corporation as members.

It is true, as suggested by Mr. Justice Williams in Hall v. Stowell, 75 App. Div. 21, 22, 77 N. Y. Supp. 953, 954, that the premiums bid and exacted in these cases constitute—

"An exorbitant compensation agreed to be paid for the use of the money, considering all the payments to be made by the defendant, but the Legislature has legalized such agreements, and if parties will enter into them they must take the consequences."

However, there is in these exorbitant charges for premiums, etc., an element of advantage to the borrower in his relation as an investor. He is contributing his proportion to the earlier maturing of his stock, which is to pay his indebtedness. The more he pays in premiums, fines, and penalties, the less he will be required to pay in interest; for the term of his interest payments depends upon the time that the stock shall be matured, and while experience has demonstrated in not a few cases that the burden is out of all proportion to the benefits derived, it is a contract which is not lacking in elements of mutuality, and there is no reason in law or in equity why one who has entered into a contract of membership in one of these associations should not be required to conform to the letter of his contract up to the time that the corporation is unable to perform its obligations. That is the only way in which each member can be placed upon an exact equality in accord with his implied agreement with every other member.

In the case at bar the defendants' assignors, parties named White, had applied to the corporation for an advance to enable them to acquire a house and lot on Forty-First street, Brooklyn, and had subscribed for 45⅓ class A shares in the company, and the corporation had issued to them the usual certificate for 45⅓ class A shares and the usual passbook, in which the monthly payments to be made were to be entered. The corporation purchased the premises for the Whites and transferred the property to them, receiving back the usual bond and mortgage. The transaction was carried on in the usual manner until 1897, when the defendants took the place of the Whites; the certificate and passbook and the property being transferred to them and a new bond and mortgage executed by them in all respects similar to the bond and mortgage executed by the Whites. This bond and mortgage was for the sum of $4,533, the par value of the stock, the amount being obtained as follows: Cash paid by the corporation, $1,100; underlying mortgages, $3,100; premium charged on loan, $733; making a total of $4,933, from which was deducted $400 paid by the member, leaving the amount of the bond and mortgage $4,533, as above stated. Subsequently the corporation paid $400 on the prior mortgages, making the net cash advance $1,100 and the amount of the prior mortgages $2,700. On becoming members of the corporation the defendants' assignors agreed to abide by the by-laws and articles of association, and to make monthly payments, which should include the dues on the shares subscribed for and the interest charges until said shares should mature. The bond and mortgage, conditioned upon the by-laws and articles of association, required the defendants to pay interest and dues as follows: Interest monthly at the rate of 6 per cent. per annum on $4,533, which, as has already been pointed out, included the advances, the amount of the underlying mortgages, and the premium bid for the present possession of the funds and credit, amounting to $22.67; dues monthly on 45⅓ shares at the rate of 25 cents per share, which included shares issued to cover the premium of $733, amounting to $11.33, or a total of $34 per month. The contract as thus expressed was carried out by both parties up to the 1st of September, 1903, when the defendants neglected to make the payments then due, and on the 13th day of September of the same year the corporation ceased to man-

age its own business, the temporary receiver going into possession on the following day, and the court below has held, following the decision in Preston v. Lamano, 46 Misc. Rep. 304, 93 N. Y. Supp. 210, that the defendants must settle according to the letter of their contract as of the 13th day of September, 1903.

When it is remembered that the defendants, in common with others, had entered into these contracts under the authority of the Legislature, each having agreed to pay a premium, with fines and penalties, under the conditions named in the contract, why should any one of them be permitted to renounce the duties and obligations of membership under the plea of an equitable adjustment? Every member who has been contributing his payments has been doing so upon the assurance that every other member was to do the same thing under penalty of foreclosure, the imposition of fines, or other conditions named in the agreement; and it would be a strange perversion of the jurisdiction of a court of equity to permit these defendants to avoid their obligations, deliberately entered into, by treating them merely as debtors for the amount of money advanced by the corporation, and crediting them with all that has been paid in as premium, interest, etc., in excess of the legal rate of interest upon such actual advances. This was not the contract, this was not within the contemplation of the parties at the time the agreement was entered into, and it would deprive the nonborrowing members of their right to share in the earnings of the corporation in the maturing of their shares. The defendants have had the advantage, presumably, of the payments made on account of the premiums in the work of maturing their shares; all of the income of the corporation, in excess of expenses, in theory at least, has been devoted to the maturing of the various classes of stock; and the amount which the defendants have contributed in excess of the interest on the advancements has, if it has been properly disposed of, gone to increase the value of the shares which represent the defendants' interest in the corporation. As investors they have had the benefit of their payments, and they are asking to avoid the obligations under which they have had these benefits, and to deprive the nonborrowing members of their right to share in the profits which they had a right to expect from the premiums and other sources of revenue of the corporation, which was pledged to devote these to the maturing of the shares.

We are equally persuaded that the defendants are not entitled to any credit on the score of the excess on interest paid on the underlying mortgages. If the underlying mortgages commanded but 5 per cent. interest, while the defendants paid 6 per cent. on the contract, that was an advantage to the corporation, representing the members of the corporation generally, and the excess would simply go to the fund devoted to the maturing of the shares. The cases of Riggs v. Carter, 77 App. Div. 580, 79 N. Y. Supp. 177, and Roberts v. Cronk, supra, affirmed on opinion below 182 N. Y. 546, 75 N. E. 1133, afford authority for the decisions already rendered, and we should have been content to rest our determination upon the opinion of Mr. Justice Gaynor, had it not been for the urgency with which the appellants have contended that there was error in that decision.

The judgment appealed from should be affirmed, with costs. All concur.