(113 App. Div. 140)

## PEOPLE v. NEW YORK BUILDING–LOAN BANKING CO.

### In re MONTAGUE'S CLAIM.

(Supreme Court, Appellate Division, First Department. May 11, 1906.)

BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—DISTRIBUTION OF ASSETS.

> A person sui juris entered into a contract with a building and loan association, becoming a member thereof and subscribing for its stock and agreeing to pay $225 per month for 144 months, including principal, interest at 5 per cent., premium; the association agreeing in consideration thereof to pay off and discharge a mortgage of $25,000 on his property before the end of the period covered by the 144 monthly payments. To secure the monthly payments the member gave to the association a mortgage on the property for $30,000. The association failed, and its dissolution was ordered before it complied with its obligation, and before the time had arrived in which it was required to have performed, and without having made any advances to the member, but after the member had made some of the payments he had obligated himself to make. Held, that the member was not entitled to come in on a distribution of the assets as a creditor distinct from those entitled to share in the distribution of the property of the association when made among the members thereof, even as to the amount paid by him denominated interest on the $30,000 mortgage to the association.

> [Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Building and Loan Associations, § 88.]

O'Brien, P. J., and Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by the people against the New York Building-Loan Banking Company. From an order overruling exceptions filed to the report of a referee, to whom was referred all claims presented against the corporation disputed by the receivers, and which further ordered that the claim of Peter J. Montague was entitled to be paid a certain sum as a creditor, the receiver appeals. Reversed, and Montague's claim as creditor denied.

See 92 N. Y. Supp. 62.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Charles W. Dayton, for appellant.
Charles R. Hall, for respondent.

INGRAHAM, J. The New York Building-Loan Banking Company was organized as a building and loan association. The corporation continued to transact business down to September 12, 1903, on which day a temporary receiver was appointed and on the 24th day of February, 1904, judgment was entered dissolving the corporation and appointing a permanent receiver. Peter J. Montague presented a claim as a creditor of the corporation, which was referred to a referee, who reported in his favor, and the receiver appeals.

It appeared that in November, 1897, the claimant owned a piece of real property in the county of Kings, upon which there was a mortgage of $25,000. In November, 1897, he applied to the defendant corporation for aid to remove this incumbrance from his property at or before the time that it became due, and offered to pay a premium for priority for such sums as the corporation might deem necessary to advance for that purpose. This was in form of a written instrument submitted to the corporation by which he subscribed for 300 shares of its class A stock. This application, after subscribing for the stock, provided as follows:

"As a member of said corporation I desire from it cash advance of $———— on the above shares, and further advance for the purpose of aiding me in removing the incumbrances, amounting in the aggregate of $25,000 consisting of a first mortgage at 5 per cent. held by Mrs. Harriman, 141 Joralemon St., Brooklyn, N. Y., now resting on my property, which I purchased on or about March, 1893, for $40,000, and which is now well worth the sum of $52,000, and which is situated and described as follows: 4 story and basement marble front store, 60 Court St., Brooklyn, N. Y., and to that end I hereby bid to pay a premium of 25 cents per month on each share, as provided by the articles of the association, for 144 months and will pay the same in advance for priority, for such sums as the corporation may deem necessary to advance to complete the above transaction. * * * If after an examination of the property, and the title thereto, the corporation considers the condition surrounding the property such as to make it a desirable and safe transaction for it to undertake, I agree to make monthly payments of $225.00, which sum includes the dues on the shares subscribed for by me for the purpose of covering the sum that the corporation shall be deemed to have advanced in the transaction, and the interest charges thereon until the said shares shall mature, when the said New York Building-Loan Banking Company shall execute or cause to be executed a full satisfaction of the above-mentioned mortgage or incumbrances, aggregating $24,000, and also the company's usual blanket mortgage to be given by me, which will comprehend the then existing mortgages as well as the premium above mentioned and any money advanced by said corporation. All payments to be made by me under this application shall be deemed to be conditional upon the provisions of chapter 122, p. 234, of the Laws of 1851 of the state of New York, and of the articles of the association and by-laws of the above corporation, although the same may not be fully expressed herein."

This application was accepted, and the claimant executed and delivered to the corporation a mortgage provided for in the application. That mortgage recited the indebtedness of the claimant to the corporation of $30,000, secured by a certain bond or obligation bearing even date therewith, conditioned for the payment of the said sum of $30,000 in accordance with the rules and regulations as set forth in the articles of the association, which amount is agreed to be paid by the payment of the sum of $75 per month, being the monthly dues or installments on 300 class A shares of the capital stock of the corporation subscribed for by the claimant, together with interest at the rate of 6 per cent. per annum, payable monthly, which interest amounts to the sum of $150 per month, making all together the sum of $225, the first monthly payment of which total sum of $225 shall become due and payable on the 1st day of December, 1897, and monthly thereafter until the maturity of the said 300 class A shares of the capital stock of the corporation of which the said Peter J. Montague is a member; and that, to secure the payment of the said sums of money mentioned in the agree-

ment and of the said bond or obligation with the interest thereon, the premises in question were mortgaged to the corporation. There was also the following provision:

"Provided, always, that as long as the payments above stipulated to be made by the said party of the first part are regularly and promptly made, the said party of the second part hereby binds itself to promptly pay the interest on a prior mortgage or mortgages upon the said premises for $25,000 as it becomes due, and further binds itself to pay off and discharge the amount of the said prior mortgage or mortgages on or before the maturity of the above-mentioned class A shares of the capital stock of the said party of the second part subscribed for by the said party of the first part, and which has been assigned to the said party of the second part as collateral security for the prompt payment of the said monthly dues, and interest, taxes, and assessments hereinafter mentioned; the intent hereof being that until the maturity of the said shares of stock the said premises shall, at the election of the party of the second part, be subject to a prior mortgage or mortgages, and if payment of said mortgage or mortgages shall be demanded, and payment thereof made before the maturity of the said shares, the party of the first part agrees in lieu thereof to execute, at his own proper cost and expense, a further mortgage or mortgages in similar amount at the option of the said party of the second part."

The articles of the association or corporation provide that the object of the corporation has been and is, among other things, to accumulate a fund for paying off incumbrances on lands and for aiding members making improvements thereon and removing incumbrances therefrom. By articles 25 it is provided:

"Every applicant for membership shall subscribe to an application form, in which he shall agree to the articles of association of this corporation and its by-laws and regulations adopted thereunder, and pay such premium or entrance fee per share as the board of directors or executive committee may from time to time determine equitable to the stockholders and to the best interest of the corporation. Such entrance fee or premium shall not be credited to the stock or shares on which it is paid as a payment thereon, or enter into any accounts of the corporation, or in any sense be deemed an asset or liability of the corporation."

Article 26 provides that the shares of the corporation shall be issued in several classes.

Article 27 provides:

"The monthly installments or dues on shares in class A shall be 25 cents, and must be paid on or before the 3d day of each month, in advance, until the money accumulating from monthly dues or installments, together with the profits from interest, premiums. fines, withdrawals, an equitable portion of any reserve or surplus fund or undivided profits, and all other profits accruing to each share, shall equal $100."

Article 49 provides:

"The sum bid as premium by any member for priority of advances or loans on shares shall be deemed to be a sum paid for the right to secure an advance prior to and against all other members who were equally entitled to secure the same, and shall be a profit wholly earned by the corporation."

Article 50 provides:

"All sums paid for priority, as provided in articles 36 and 49, shall be for priority, and not for the use of money."

Under this application for membership in the corporation, the claimant paid to the corporation $225 per month down to and including

August, 1903.   By the application for shares of stock in the corporation, the claimant subscribed for 300 shares of class A stock, and also applied for advances to enable him to remove an incumbrance of $25,000 on his property, and to that end he bid to pay premiums of 25 cents monthly on each share, as provided in the articles of the association, for 144 months, and agreed to pay the same in advance for priority for such sums as the corporation may deem necessary to advance to complete the above transaction.   After the corporation accepted the proposition he agreed to make monthly payments of $225, which sum includes all dues on the shares subscribed for by him for the purpose of covering the sum which the corporation shall be deemed to have advanced in the transaction and the interest and charges thereon until the said shares shall mature, when the corporation undertook to have executed a full satisfaction of the mortgage or incumbrance aggregating $25,000 and the company's mortgage to be given to the claimant.   By this agreement the corporation obligated itself to discharge the mortgage and all interest on the claimant's property.   I can see no basis for the division of the rights accruing on the obligation to either of the parties to this agreement.   The claimant, being of full age, entered into the contract, which it must be assumed he supposed would be an advantage to him.   In form, he subscribed to the stock of the corporation, and thereby became a member of the corporation.   He agreed to pay a premium of $5,000 in monthly payments for securing from this corporation an obligation that it was to pay off this mortgage of $25,000 upon his property before the maturity of the stock to which he subscribed, thus relieving the property from the lien of the mortgage.   In full of these various payments that he agreed to make as a consideration for the corporation's promise, he undertook to pay to this corporation a sum of money each month for a certain period, and, if the company had continued in existence and performed its obligations, the object of his becoming a member of this corporation and making these payments would have been secured. If the installments had been paid, there would have been no liability under the mortgage, and no sum would be due under it.   What in fact the claimant agreed to do was to pay $225 per month for a certain number of months, and what the corporation agreed to do was, before the last of these payments, to pay off and discharge the mortgage of $25,000 on the claimant's property, and to secure these monthly payments the claimant gave to the corporation a mortgage upon the property.

The corporation having failed before it complied with this obligation, and before the time had arrived in which it was required to have performed it, the question is whether this claimant becomes a creditor of the corporation entitled to be paid as a creditor, or whether as a member of the corporation he shares with the other members of the corporation in its assets after the payment of its debts.   The question that has been presented in relation to the determination of the amount due corporations of this kind, upon advances made by the corporations to its members, is not here presented, as no advance was made to the claimant.   We have the converse of that proposition, for here the member, having subscribed to the stock of the corporation, has taken

from it an obligation to pay a mortgage upon his property, and has paid on account of his obligation to the corporation a portion of the consideration that he agreed to pay. If the claimant had not become a member of the corporation by subscribing to the shares of stock, but had occupied the position of an independent party contracting with the corporation, as here indicated, he would be a creditor of the corporation and entitled to recover from the corporation the money that he had paid or the amount of damages that he sustained by reason of the corporation's failure to comply with its contract, and pay off his mortgage. That, however, is not the relation that the claimant bears to the corporation. He has become a member of it, joining in with the other members of the corporation, and, by reason of his membership, the corporation made this agreement with him, and thus he became a part of the corporation itself. It seems to me that his position is somewhat analogous to that of a partner in a copartnership, when the copartners agree among themselves that the profits of the business are to be divided in certain proportions, depending upon the capital contributed by the various members of the copartnership. It may be that, on a distribution of the assets after the payments of its debts, he would be entitled to preference over the other members of the corporation, and that his claim should be paid first. But I cannot see how he can be said to come in as a creditor as distinct from those entitled to share in the distribution of the property of the corporation when made among the members of the corporation. The learned referee has held him to be a member as to his subscription to the stock of the corporation, and as to that he must join with the other stockholders, but, as to the payment of what was called interest on the $30,000 mortgage, he occupied the position of creditor, and not as a member. But this distinction, it seems to me, was unauthorized, and it cannot be sustained.

I think, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and the application of the petitioner to claim as creditor should be denied, with $10 costs, without passing on his rights as between himself and the other members of the corporation.

PATTERSON and CLARKE, JJ., concur.

O'BRIEN, P. J. (dissenting). Were it not for the two cases of Preston v. Reinhart (Sup.) 96 N. Y. Supp. 851, and Preston v. Lamano (Sup) 93 N. Y. Supp. 210, which are relied upon by the appellant, and which he contends are directly in point, we should not feel called upon to add anything to the reasons assigned by the learned referee for his conclusion in holding in the case at bar that Montague was entitled to be paid, as a creditor, the amount of interest paid by him in excess of the interest paid by the company on the $25,000 mortgage. The fact, however, that both cases referred to are decisions of the Appellate Division in the Second Department, and which, were they directly in point, we should follow, makes it necessary briefly to refer to what we regard as features distinguishing them from the case at bar. The Lamano action was one brought by the receiver of a building

loan company to foreclose a mortgage given as collateral security for a loan, and it was there held that the premiums and all other payments must be left out of consideration entirely in fixing the amount due to the receiver by the defendant member. The Reinhart Case is in no way distinguishable in its facts from the Lamano Case, and the rule in the former case was therefore very properly applied in determining the rights of the parties. The principal fact which distinguishes those cases from the case at bar is that here no loan was made, nor was there any consideration moving from the company to Montague. It is true he was a member, having subscribed for stock in the building loan company; but this relation was one which he was obliged to assume as a condition for the agreement which the company made with him that, in the event of the mortgage on the property becoming due before the amounts which he agreed to pay were sufficient to meet the principal, they would loan whatever was necessary to protect him until the time fixed when they agreed to pay the mortgage in full. In noting the distinction, therefore, we must not lose sight of the important fact that in the cases relied upon the company made a loan, whereas in the case at bar they did nothing but take Montague's money upon an agreement to protect him against the foreclosure of a mortgage, which agreement on their part is ended because of the insolvency of the company. This necessarily results in the failure of the consideration upon which alone the company could claim the right to receive from Montague any more money, or, in our judgment, to retain what they had already received. It will not do, in construing the contract entered into by Montague, to make that the principal feature which is really incidental and subsidiary, namely his becoming a member of the loan company, and then, as a result of so regarding him, to hold that he should not only lose the amount which he paid on his stock, but that, in addition, the company should be allowed to retain money which it received without paying or parting with any consideration therefor. In applying to the loan company, what Montague sought to obtain was protection against the foreclosure of a mortgage then on his property; and, in order to procure the agreement from the loan company, it imposed as a condition, not alone that he should take the stock, but that, during the period intervening between his application and the time when they would be called upon to advance the money, he should make payments in excess of the interest due on the existing mortgage; such payments being made in consideration of their promise to protect him against its foreclosure. The company never having been called upon to advance money, and having become insolvent, has been guilty of a breach because of inability to perform its contract, and it would be in the highest degree inequitable to permit the company to retain money which it has received without having parted with any consideration therefor. Nor do I think that the position of the appellant is sustained by the line of argument upon which he proceeds in contending that the contract is to be construed as though the principal feature was membership in the company, which membership imposed upon the member not only the forfeiture of what he had paid upon the stock, but deprived him of any rights to money which he had voluntarily paid, and which the company received and

insisted on retaining without having parted with any consideration therefor. This process of reasoning also assumed that it is impossible legally to separate the two relations which one could occupy under the contract, viz., as a stockholder and as a borrowing member; and yet, as I read all the text-books and decisions, the two relations are perfectly severable and distinct.

It would serve no useful purpose to collate and discuss what has been said by text-writers and in the numerous decisions on the question, all sustaining this statement, thinking it sufficient to refer to but one—the case of Roberts v. Cronk, 94 App. Div. 171, 88 N. Y. Supp. 103, affirmed 182 N. Y. 546, 75 N. E. 1133, which was similar to the Lamano and Reinhart Cases, in that it was an action by the receiver of an insolvent loan association to foreclose a mortgage executed by a shareholder. In this case it was held that:

"The shareholder is not entitled to be credited upon the mortgage in the foreclosure action with the amount of dues paid by him to the association, or with the amount of the monthly premium which he paid as a bonus for the loan."

In the opinion in that case, however, it was said:

"We cannot express our view of the law defining the rights of the parties, in the circumstances in which they are now placed, better than to reiterate the words of Mr. Justice Williams, in the case of Hall v. Stowell, 75 App. Div. 21, 77 N. Y. Supp. 953: 'When the corporation making the loan goes into the hands of a receiver, and it is no longer able to carry out the agreement, the borrower is relieved also from compliance with the terms thereof, and an equitable adjustment between the parties must be made. In such case the better rule seems to be that the borrower be charged with the money received from the corporation and the legal rate of interest thereon, and be credited with such payments as are referable to the loan itself, and not to the stock. This rule is based upon the theory that the relations of a member as a shareholder and a borrower are separate and distinct; that as a shareholder he should bear his proportionate share of the loss, but as borrower he should have the benefit of the rescission of the contract, and should repay what he has received, less what he has paid on account thereof'—citing Strohen v. Franklin Saving, etc., Loan Ass'n, 115 Pa. 273, 8 Atl. 843; Post v. Building & Loan Ass'n, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201; Endl. Build. Ass'n (2d Ed.) §§ 514, 515, 531; Rochester Savings Bank v Whitmore, 25 App. Div. 491, 49 N. Y. Supp. 862; Breed v. Ruoff, 54 App. Div. 142, 66 N. Y. Supp. 422; and Hannon v. Cobb, 49 App. Div. 480, 63 N. Y. Supp. 738."

If, therefore, we can, as the cases seem to hold, legally separate the relations which Montague occupied as shareholder and under his contract to obtain security against the foreclosure of the mortgage, then it seems to follow that, upon the failure of the company and its consequent inability to carry out its contract to protect him against the enforcement of the lien of the mortgage, the consideration for his payments failed, and he is entitled to such settlement as will return to him all moneys paid by him because of such contract, less the moneys paid out for him. The conclusion of the learned referee that the company did no beneficial thing to or for this claimant is not only supported, but, as we understand it, is not in dispute; and the agreement of the company to do something which its insolvency will now prevent its ever doing, presents an instance where the consideration for the contract has entirely failed. The rule is settled that when money has been paid on

contract, and the consideration fails, an action for money had and received will lie.

In the Lamano and Reinhart Cases there was a partial performance. The member got the advance and was furnished with money; whereas, in this case, as we have endeavored to point out, Montague got nothing for the money which he seeks to have allowed to him as a creditor.

Thinking, as we do, therefore, that upon the facts, and upon the law applicable to them, there is a clear distinction to be noticed between the cases relied upon by the appellant and the one at bar, we are of opinion that the order appealed from should be affirmed, with costs.

LAUGHLIN, J., concurs.